## MARIFIAN v. UNITED STATES.*

### KOLAR v. SAME.

### FINK v. SAME.

### Nos. 10423–10425.

Circuit Court of Appeals, Eighth Circuit.
March 25, 1936.

Rehearing Denied April 14, 1936.

Charles A. Lich, of St. Louis, Mo. (Joseph J. Lemen and E. C. Koeneman, both of St. Louis, Mo., on the brief), for appellants.

Henry G. Morris, Asst. U. S. Atty., of St. Louis, Mo. (Harry C. Blanton, U. S. Atty., of Sikeston, Mo., on the brief), for the United States.

Before STONE, VAN VALKENBURGH, and FARIS, Circuit Judges.

STONE, Circuit Judge.

These three appellants, with Sam Birenbaum and George Stone, were indicted in three counts, the first of which charged possession of 27 boxes of New Currency cigars stolen from an interstate shipment; the second count was for similar possession of 60 cans of Muriel cigars; and the third count for a conspiracy to receive, possess, and offer for sale and to transport the above cigars. Birenbaum and Stone pleaded nolo contendere and were witnesses for the government. Each of the three appellants was found guilty. From such judgments they bring separate appeals.

Three matters are presented in the joint brief of appellants. The first of these is that the evidence was insufficient to identify the cigars found in possession

*Writ of certiorari denied 56 S. Ct. 956, 80 L. Ed. ——.

and others admitted to have been possessed as being stolen from an interstate shipment. The second is that the evidence was insufficient to show guilty knowledge. The third is that the cigars at the time they were stolen had ceased to be part of an interstate shipment and therefore the court erred in not directing a verdict or, what was in substance the same contention, to instruct the jury that if the goods at the time they were stolen were being transported by an agent of the consignee the verdict should be for defendants. In the oral argument no mention was made of the second above issue relating to guilty knowledge, and we assume therefrom its abandonment [United States v. Chicago, Burlington & Quincy R. Co., 82 F.(2d) 131 (C.C.A.8), decided February 10, 1936; Schnitzer v. United States, 77 F.(2d) 233, 235 (C.C.A.8)], and direct our attention only to issues 1 and 3, above.

### I. Identity of Cigars.

In order that this point and the evidence relating to it may be understood, it is necessary to state the general situation as shown by the testimony. The Hauptmann Tobacco Company of St. Louis, Mo., was the exclusive agent or representative of P. Lorillard & Company of Richmond, Va., for the sale of Muriel and of New Currency cigars in a territory which included St. Louis, Mo., and East St. Louis, Ill. One shipment from Lorillard to the Hauptmann Tobacco Company billed (freight prepaid) from Richmond, Va., to the company at its address in St. Louis, Mo., reached East St. Louis, Illinois, on its journey. Instead of being carried further by rail carrier, it was there met by truck to be carried to the Hauptmann Tobacco Company's place of business (to which it was billed) in St. Louis, Mo. The shipment consisted of 231 cartons, some of which contained Muriel cigars packed in tin cans while others contained New Currency cigars packed in cigar boxes. The truck took 226 cartons, leaving 5 which were subsequently called for and received by the Hauptmann Company. After proceeding a short distance, and while yet in East St. Louis, the truck was taken possession of by an armed man who ultimately ejected the driver. This theft occurred April 11, 1934. Investigators, at once, took up the trail and recovered about 143 cartons from parties who are not here involved. In the course of this investigation, and on May 28, 1934, appellant Kolar was arrested while driving his automobile in East St. Louis, Ill. In the automobile was found a carton with 27 boxes of New Currency cigars. Defendants testified to the purchase of sixty cans of Muriel cigars at the same time 80 boxes of New Currency cigars (of which the twenty-seven boxes were part) were bought.

■ This issue of identity has to do with the identity of these 27 boxes of cigars and of the 60 cans of Muriel cigars as parts of the stolen shipment. The evidence reveals the following upon that issue: This was the same kind of carton in which the cigars had been shipped. These were the same brands of cigars in the shipment. The carton had contained a label which had, obviously, been intentionally mutilated in an attempt to destroy it. Some particles of the label had not been destroyed. These fragments showed that this label was the same size label as that used upon this and other shipments. A few letters on the label had escaped mutilation. These letters corresponded in identity, character, and location on this label to like letters on similar labels used in this and other shipments. The cigar boxes had upon them internal revenue stamps with a perforated date cancellation showing "3-26-34." Similar perforations were in the stamps on the cigar boxes in some of the five cartons forming part of this shipment but which were not on the truck. Just before the delivery of the cartons to the truck, some of them seemed to be damaged. The damaged cartons were inspected at that time and found to contain Muriel cigars packed in tin cans. Some of these cans had been damaged. The evidence developed that two cartons, one of Muriels (60 cans) and one of New Currency (80 boxes) cigars, were involved in the transactions of these defendants and that some of these cans containing the Muriel cigars bought were damaged. There was direct evidence that all of the cigars involved here were stolen. There was no evidence of theft of any other cigars except from this truck. Certainly the above evidence is sufficient to warrant a finding by the jury that this carton, these 27 boxes therein, and the 60 cans of Muriel cigars were a part of those stolen from this shipment.

### II. Termination of Interstate Shipment.

This issue is one rather of law than of fact as the evidence concerning it is

undisputed and is as follows: The Weber Drayage Company had an arrangement with the Hauptmann Tobacco Company by which it rented the services of a truck and driver (whose wages were paid by the Weber Drayage Company) to the tobacco company by the month for a stipulated sum. The truck and driver were at the disposal and under the direction of the tobacco company and used by it for hauling consignments of goods to and from its place of business. The shipment in question was billed and moved from Richmond, Va., to Peter Hauptmann Tobacco Company, 611 Chouteau avenue, St. Louis, Mo., under a prepaid freight bill. In course of such carriage it arrived over the Southern Railway Company at East St. Louis, Ill. At that point it was met by the above truck for carriage to the Hauptmann Company place of business in St. Louis, Mo. The theft was from this truck in the course of the trip from East St. Louis, Ill., to St. Louis, Mo.

The contention of appellants is that the delivery to this truck was delivery to the consignee and a termination of the interstate journey within the meaning of the statute here charged to be violated, and that the statute does not cover carriage by an owner of his own property across a state line where the owner is not a public carrier.

The statute here involved is section 409, title 18 U.S.C.A. The statute is sufficiently clear and broad to cover this situation here. Among other things, that statute provides: "whoever shall steal or unlawfully take, carry away, or conceal, or by fraud or deception obtain from any railroad car, station house, platform, depot, wagon, automobile, truck, or other vehicles, or from any steamboat, vessel, or wharf, with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight or express, or shall buy or receive or have in his possession any such goods or chattels, knowing the same to have been stolen. * * * The words 'station house,' 'platform,' 'depot,' 'wagon,' 'automobile,' 'truck,' or 'other vehicle,' as used in this section, shall include any station house, platform, depot, wagon, automobile, truck, or other vehicle of any person, firm, association, or corporation having in his or its custody therein or thereon any freight, express, goods, chattels, shipments, or baggage moving as or which are a part of or which constitute an interstate or foreign shipment."

The above-quoted language certainly includes common carriers and was intended to fully cover and protect such, but its language is not confined thereto. It is broad and general enough to cover any interstate carriage by the vehicles designated whether such carriage be by a public carrier or otherwise. Neither does the circumstance that such carriage is by the owner of the property being carried put the property outside of the protection of the statute. Friedman v. United States, 233 F. 429 (C.C.A.1), certiorari denied Freedman v. United States, 244 U. S. 657, 37 S.Ct. 744, 61 L.Ed. 1375, and writ of error dismissed Friedman v. United States, 244 U.S. 643, 37 S.Ct. 650, 61 L.Ed. 1367. The statute afforded protection to the property on this truck in its journey from East St. Louis, Ill., to St. Louis, Mo., whether that journey be regarded as the final movement in the original shipment from Richmond, Va., to St. Louis, Mo., or as an independent movement from East St. Louis, Ill., to St. Louis, Mo.

The judgments of conviction should be, and are, affirmed.