## UNITED STATES v. GOLLIN.

### SAME v. RICHMAN.
### Nos. 9405, 9410.

Circuit Court of Appeals, Third Circuit.
Argued Oct. 23, 1947.

Decided Feb. 11, 1948.
Writ of Certiorari Denied April 19, 1948.
See 68 S.Ct. 905.

124

Frederic M. P. Pearse, of Newark, N. J. (Harold Simandl, and Samuel J. Kaufman, both of Newark, N. J., on the brief), for appellant, Benjamin Richman.

Charles J. Tyne, of Newark, N. J. (Edgar H. Rossbach, U. S. Atty., of Newark, N. J., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The defendants-appellants were convicted under both counts of an indictment charging them with stealing 600 cases of beer constituting an interstate shipment, and with having guilty possession of the beer.[1]

Appellants' first contention is that the government proofs did not show that the shipment was in interstate commerce at the time of the theft and that therefore the motion for acquittal should have been granted. The evidence indicated that early on the morning of June 15, 1946 at Ballantine's Brewery, Newark, New Jersey, the beer had been loaded on a truck which was then sealed and driven by the loader to a point on a public street in front of the brewery garage and two blocks from the loading platform where it was stopped to await its previously assigned driver or drivers who were to take it to North Tarrytown, N. Y. The loader left the completed bill of lading with the truck keys at the garage to be picked up by such driver. None of this testimony was contradicted. The defendants did not take the stand nor was any evidence offered on their behalf. When the loader returned, the truck and the beer were gone.

As seen, the brewery was the shipper and both intrastate and interstate carrier. The circumstances that the carriage was by the owner of the property did not put the property outside of the protection of the statute. Friedman v. United States, 1 Cir., 233 F. 429; certiorari denied 244 U.S. 657, 37 S.Ct. 744, 61 L.Ed. 1375; motion to dismiss granted 244 U.S. 643, 37 S.Ct. 650, 61 L.Ed. 1367; Marifian v. United States, 8 Cir., 82 F.2d 628; certiorari denied 298 U.S. 686, 56 S.Ct. 956, 80 L.Ed. 1406. With the simple fact of the brewery's rôle as shipper and carrier understood and accepted as it must be under the decisions, it seems to us that the evidence meets the test laid down in Hammer v. Dagenhart, 247 U.S. 251, at page 272, 38 S.Ct. 529, 62 L.Ed. 1101, namely, that the commerce begins when the transfer of the commodity to another state is actually commenced. The sealed shipment had in effect been turned over to the interstate driver. Every intrastate detail had been completed. The driver had only to pick up his bill of lading and keys and continue the interstate movement of the truck which had begun when it left the brewery loading platform.

The instant facts are quite unlike the illustration in Coe v. Errol, 116 U.S. 517, 6 S.Ct. 475, 479, 29 L.Ed. 715, of goods being moved for loading purposes from within the state to the depot in order to put them in the course of exportation. In the present issue, all that had been previously taken care of and the beer when stol-

---

[1] The relevant provisions of the pertinent statute, 18 U.S.C.A. § 409, read: "* * * whoever shall steal or unlawfully take, carry away, or conceal, or by fraud or deception obtain from any railroad car, station house, platform, depot, wagon, automobile, truck, or other vehicle, or from any steamboat, vessel, or wharf, with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight or express, or shall buy or receive or have in his possession any such goods or chattels, knowing the same to have been stolen; * * * shall in each case be fined not more than $5,000, or imprisoned not more than 10 years, or both, * * *. The words 'station house', 'platform,' 'depot,' 'wagon,' 'automobile,' 'truck,' or 'other vehicle,' as used in this section, shall include any station house, platform, depot, wagon, automobile, truck, or other vehicle of any person, firm, association, or corporation having in his or its custody therein or thereon any freight, express goods, chattels, shipments, or baggage moving as or which are a part of or which constitute an interstate or foreign shipment." (Feb. 13, 1913, Ch. 50, par. 1, 37 Stat. 670; Jan. 28, 1925, Ch. 102, 43 Stat. 793, Jan. 21, 1933, Ch. 16, 47 Stat. 773.).

en was actually in the course of the exportation itself. Here the exportation was "a fixed and certain thing", not "in fieri" as in the Coe case example. The facts existing at the time of the robbery are the controlling element with reference to the interstate commerce status of the beer and those facts indicate that the beer, as said in United States v. Fox, 2 Cir., 126 F.2d 237, 238, was in "the possession of any of those who are to forward * * * [it] upon an interstate journey." In the Fox matter the robbery occurred while the goods were in a truck taking them from the shipper to the interstate carrier within the one state. This was much the same as if the beer in question had been stolen from the brewery truck while the loader was taking it to the point opposite the garage where the driver was to take over. The Fox opinion relied on Sharp v. United States, 5 Cir., 280 F. 86, 88, which involved alcohol in a car in the possession of a local switching railroad and enroute to an interstate railroad. It was held that the shipment was interstate in nature at the time since "the car containing it was launched on its way to another state by being committed to the switching line for delivery to the carrying line. The switching was the initial step in an interstate carriage." Here the loader in delivering the sealed truck and the bill of lading to the interstate driver had started the truck on its interstate journey. The brewery thereafter, though the shipper, was functioning as its own interstate carrier. Cf. Wolk v. United States, 8 Cir., 94 F.2d 310, 312. That the brewery could have physically stopped the shipment then or later is unimportant. As said in Hughes Bros. v. Minnesota, 272 U.S. 469 at page 476, 47 S.Ct. 170, at page 172, 71 L.Ed. 359. "The mere power of the owner to divert the shipment already started does not take it out of interstate commerce if the other facts show that the journey has already begun in good faith and temporary interruption of the passage is reasonable and in furtherance of the intended transportation * * *." And the temporary stoppage of commerce on its way to the ultimate customer does not destroy the interstate commerce movement. See cases collected in United States v. Sheffield Farms Co., D.C.S.D.N.Y., 43 F.Supp. 1 at page 5.

A more serious situation is next urged in connection with a portion of the court's charge. The basis of the federal offenses involved was that at the time the beer was allegedly stolen and received, it was moving in interstate commerce. The District Judge in his charge discussing the interstate commerce phase said, "You are instructed that the Congress has provided that it is a criminal offense for anyone to steal goods from a motor truck while in interstate or foreign commerce." He then stated, "In this connection you are instructed that the evidence in this case discloses that the goods alleged to have been stolen were loaded into a truck at the loading platform of P. Ballantine & Sons in Newark, New Jersey. P. Ballantine & Sons was the shipper of said goods, and the same were consigned to Charles Leuberger at North Tarrytown, New York. A shipment of goods from Newark, New Jersey, to North Tarrytown, New York, would be a shipment in interstate commerce. After the truck in question was loaded, the evidence discloses that the door was closed and sealed, and thereafter the truck was moved to a garage on the premises of the shipper. The key to the truck and the bill of lading were left, and the truck was left to be driven in the usual course of business of the company to its proposed destination at North Tarrytown, New York. And the proof of the government tends to establish that the goods were stolen from the garage at the place where the truck was left after having been removed from the loading platform." Immediately following the above the court said, "Under this state of facts you are instructed that as a matter of law the truck was moving in interstate commerce at the time it is contended by the government that the beer was stolen therefrom. That is a matter of law. The facts are not disputed and that constitutes the jurisdiction of this court and is a matter for the court to determine and not a matter for the jury to determine."

It is true that the evidence pertaining to the interstate commerce status of the truck and its shipment was uncontradicted. And

a study of the original transcript fails to reveal any indication of the defense affirmatively contesting that testimony. Horn, the assistant general transportation manager for the brewery, was the witness who told of drivers having been assigned to the truck and of their procedure in ascertaining their route, where the truck is, picking up their papers and keys, getting on their trucks, making deliveries, etc. No attempt to cross examine him was made on behalf of either defendant. And Grabowski, the loader, was not cross examined on any of the interstate commerce features of his testimony. Appellants' primary insistence both at the trial and at this appeal in connection with the interstate commerce feature seems to be that the jury should have been allowed to judge what constituted interstate commerce. We think the trial court was correct in considering this a question of law and, as appears from our discussion of the first point, we agree with him that the government evidence, if believed, did show that the shipment was in commerce when stolen and received. But the trial judge inadvertently went further than this. He "instructed" the jury just what the evidence was regarding interstate commerce and then told them that under "this state of fact" the truck, as a matter of law, was moving in interstate commerce during the critical period. This question seems to have been considered by the court entirely from the viewpoint of jurisdiction and jurisdictional questions oftentimes are for the court and not dependent on the evidence. Cover v. Schwartz, 2 Cir., 133 F.2d 541, 546. However, determination of jurisdiction may require proof of facts. United States v. Wilson, 10 Cir., 78 F.2d 465, 467. And in this instance the interstate commerce feature which gave the court jurisdiction was itself a major element of the alleged crimes.

The trial judge was also obviously influenced in his action by the apparent lack of dispute regarding the evidence in question. But there was no agreement, formal or informal, with respect to the facts on the interstate commerce aspect of the case. Nor, despite the lack of any contradictory testimony or cross examination tending that way, is there any fair inference that the defense accepted the government interstate commerce evidence. Its credibility therefore still remained a problem for the jury. The usual jury instruction under the circumstances would have been and should have been that if they believed the specified government evidence then as a matter of law the truck was moving in interstate commerce at the particular time. Cf. United States v. Crescent-Kalvan Co. et al., 3 Cir., 164 F.2d 582. The decision relied on by the government, Nick, et al. v. United States, 8 Cir., 122 F.2d 660, 673, 138 A.L.R. 791; certiorari denied 314 U.S. 687, 62 S.Ct. 302, 86 L.Ed. 550; rehearing denied 316 U.S. 710, 62 S.Ct. 1103, 86 L.Ed. 1776, specifically upheld the type of charge mentioned i. e. if the jury believes the evidence then it must find interstate commerce. That opinion holds the law was for the court and credibility for the jury.

As this branch of the case was actually given by the court to the jury the latter, whether they themselves believed it or not were forced to accept as true the factual testimony of the government witnesses. That testimony covered an all important element of the alleged offenses. Without the property being in an interstate movement when stolen, there was no federal offense. So in the absence of the stipulation agreeing to the facts testified to (United States v. Hefler, 2 Cir., 159 F.2d 831) or at least a far more precise showing that the facts were not disputed than presently appears (Horning v. District of Columbia, 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185) we cannot uphold the trial court in directing the jury to accept as facts the testimony in question. That action really brought about a partial direction of verdict against these defendants in this criminal trial and on an indispensable part of the proofs. It did not necessarily result in defendants ultimately being found guilty on either count for the stealing and receiving had to be independently established. But since the stealing and receiving were substantiated to the satisfaction of the jury as evidenced by the verdicts of guilty, the mandatory instructions that the truck was in interstate commerce must be construed as having definitely affected those verdicts. Contrariwise if the stealing or receiving had been found by the jury but that body did not believe

the evidence regarding the truck then acquittals should have followed.

 The District Judge was without power to direct a verdict of guilty although no fact might have been in dispute. Sparf & Hansen v. United States, 156 U.S. 51, 105, 15 S.Ct. 273, 39 L.Ed. 343; United States v. Taylor, C.C., 11 F. 470; Atchison T. & S. F. Ry. Co. v. United States, 7 Cir., 172 F. 194, 27 L.R.A.,N.S., 756. And what the judge is forbidden to do directly he may not do by indirection. Peterson v. United States, 9 Cir., 213 F. 920. The situation confronting us goes further than the facts in Dinger v. United States, 8 Cir., 28 F.2d 548. There, as here, the defendant had not taken the stand and the only evidence in the matter was that of the government. The Circuit Court of Appeals, in reversing, construed the District Court's charge as directing the jury to believe the government witnesses and then instructing them if they did believe the government witnesses they must find the defendant guilty. Regarding this the court said at page 551 of 28 F.2d; "This was tantamount to a direction to convict, which is not permissible in a criminal case."

Earlier in the charge in the case at bar the trial judge did say that "The burden is upon the government to prove the material allegations in each count of the indictment and, before you would be warranted in finding a verdict of guilty, the evidence must be such as convinces you of the guilt of the defendant or defendants beyond a reasonable doubt." And also, "You, as jurors, are the sole judges of the weight of the evidence and the credibility of the witnesses." After the questioned part of the charge the court told the jury, "If you find from the evidence and beyond a reasonable doubt that the defendants * * * at Newark, New Jersey, did knowingly, * * *, steal from an automobile truck [beer] * * * which had been consigned to Charles Leuberger, at North Tarrytown, New York, you should find the defendants guilty as to the first count. On the other hand if you fail to so find, you should return a verdict of not guilty, or if you entertain a reasonable doubt as to the guilt of the defendants you should give them the benefit of the doubt and acquit them." This latter thought was repeated with reference to the receiving count of the indictment. We do not think this language cured the error, particularly since the statement that the truck was moving in interstate commerce was reiterated by the court in colloquy with counsel after the completion of the charge. At that time the court stressed the jurisdictional and undisputed fact ideas as previously. Cf. Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321.

The final contention of the appellants has to do with the refusal of the trial court to charge appellants' request No. 2. We have examined the request. We find it improper as submitted, with no error attaching to the refusal to charge it.

The judgments of the District Court will be reversed and the cases remanded to that court for new trials.