## UNITED STATES v. CURZIO.
### No. 9590.

United States Court of Appeals
Third Circuit.

Argued June 22, 1948.

Decided Sept. 30, 1948.

John M. Smith, Jr., of Philadelphia, Pa., for appellant.

Walter A. Gay, Jr., of Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

Eugene Curzio, who is the appellant before us, and three others—Portella, Zeoli, and Danzo by name—were indicted on a charge of conspiracy "to commit offenses against the United States by wilfully and unlawfully acquiring, possessing, controlling and transferring counterfeited ration documents, to wit, counterfeited gasoline, meats-fats and shoe ration stamps and coupons." In connection with this conspiracy, the indictment recited three overt acts: (1) that Zeoli transferred 400 counterfeited gasoline ration

---

[5] 3 Bouv.Law Dict., Rawle's Third Revision, p. 3376.

coupons to Portella on June 30, 1945; (2) that appellant transferred 400 counterfeited gasoline ration coupons to Portella on June 20, 1945; and (3) that on August 22, 1945, Curzio "wilfully and unlawfully acquired, possessed and took custody of and caused to be acquired, possessed, and taken into custody" about two million counterfeited meats-fats and 8,064 counterfeited shoe ration stamps. The case was tried before the court without a jury. When the government rested its case, counsel for Zeoli, Danzo, and Curzio moved for a directed verdict of not guilty.[1] The court ruled as follows: "Gentlemen, I will say that this case is absolutely lacking in the essentials that go to constitute conspiracy * * * this is not a case of conspiracy. The indictment is, unfortunately, not well chosen. These cases [the overt acts] indicate, by the very acts, that they are isolated cases. There are no facts and circumstances which would warrant a jury in finding that there had been an agreement among the parties to violate the law. There is testimony to the effect, if the Government witnesses are to be believed, that might indicate to a jury that there was unanimity in the three[2] defendants doing a certain thing, but they are overt acts independent in their commission, although the rewards might benefit all mutually, but there is no evidence as to that." At a later point, the judge added, "The substantive offenses may be entirely different, because these overt acts are pretty substantial." Eventually, the judge ordered entry of a verdict of not guilty as to all four defendants.

Appellant had also been indicted separately on four counts: (1) illegal possession of 400 gasoline ration coupons on July 20, 1945; (2) possession with intent to utter 400 counterfeited gasoline ration stamps, on the same date; (3) possession of about two million counterfeited meats-fats and 8,064 counterfeited shoe ration stamps on August 28, 1945; and (4) possession with intent to utter about two million counterfeited meats-fats and 8,064 counterfeited shoe ration stamps on August 22, 1945. Brought to trial before a jury on this indictment after his acquittal of the conspiracy charge, appellant was found guilty on the last two counts.[3] The instant appeal has been taken.

The first question for our consideration is whether, as appellant contends, his acquittal of the conspiracy charge is res judicata of the offenses charged in the third and fourth counts of the instant indictment. We hold in the negative.

Sealfon v. United States, 1948, 332 U. S. 575, 68 S.Ct. 237, the case upon which appellant relies, poses no obstacle to appellant's subsequent trial and conviction of the substantive offenses. In that case, Sealfon had been indicted twice, once on a charge of conspiracy to defraud the United States and secondly on the substantive charge of uttering and publishing false invoices as true. The conspiracy indictment was tried first. The evidence disclosed that Sealfon concededly wrote and sent to one Greenberg a letter, in which Sealfon stated that some of the syrup of his company was being sold to the Brooklyn Navy Yard. Sealfon could be found guilty of conspiracy only if this letter had been sent pursuant to an agreement with Greenberg to defraud. The jury returned a verdict that Sealfon was not guilty. Then Sealfon and Greenberg were brought to trial on the substantive offense. At this trial, the theory of the prosecution was that Sealfon had aided and abetted Greenberg in commission of the substantive offense. This could be true, however, only if the prosecution established the same fact as it unsuccessfully attempted to prove at the conspiracy trial; viz., that Sealfon's letter was part of an agreement to defraud. Consequently, the Supreme Court ruled that the second prosecution was barred, because acquittal of the conspiracy charge was a final

---

[1] Under Rule 29 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., the motion, of course, should have been for a judgment of acquittal.

[2] Portella originally pleaded nolo contendere. After the court directed the acquittal of the other three defendants, however, Portella obtained permission to withdraw his plea.

[3] Verdict in favor of appellant was directed on the first and second counts.

determination that Sealfon had no such agreement with Greenberg.

The facts before us here are entirely different. Had the conspiracy trial judge, sitting as a jury as well, decided that the prosecution had failed to prove that appellant had possession of the counterfeited meats-fats and shoe ration stamps, we should have a situation comparable to that in the Sealfon case. The conspiracy trial judge, however, was not required to make such a decision, and the extracts from his comments quoted above clearly show that he did not do so. He held only that there was no concert of action between Curzio and his fellow defendants. In fact, the conspiracy trial judge unmistakably inferred that he believed there was ample proof of the commission of the overt acts charged in the conspiracy indictment. In short, the judgment of acquittal in the conspiracy trial was not "a determination favorable to petitioner of the facts essential to conviction of the substantive offense." 332 U.S. at pages 578, 579, 68 S.Ct. at page 239. Since the conspiracy trial did not decide that appellant was not in possession of the counterfeited stamps, we conclude that the res judicata principle did not bar appellant's subsequent trial on the substantive offenses of possession and possession with intent to utter.

Next, appellant has assigned as reversible error that the trial judge, although specifically requested to do so, failed to define "possession". This objection warrants close analysis.

At the trial in the court below, the government offered no testimony that any of the stamps here in question had been seen or found on appellant's person. The theory of the government was that appellant had placed the stamps in a locked closet of a room he rented. In support of this position, the government introduced evidence tending to show that appellant had rented, at $10 per week, a room in the home of a virtual stranger whose price for the room had been $8 per week; that the landlord had not seen appellant occupying the room as living quarters, but that federal agents had observed appellant entering and leaving the building; that, shortly after appellant rented the room, the landlord noticed a lock had been placed on the door of a closet in the room; that, after the federal agents accosted appellant and asked him to accompany them to the room, one of the federal agents found in the vicinity of appellant's path a key which fitted the lock on the closet door; and that the federal agents, acting pursuant to a warrant, found in the closet a box weighing about three hundred pounds and containing the stamps here involved.

Appellant took the stand in his own defense. He alleged substantially that he had never rented the room, and that he at no time entered the home prior to the seizure.

Appellant asked the court to instruct the jury "what possession means under the facts of this case." The prosecution joined in the request, but apparently for the reason that the prosecution wanted the jury to understand that, under the third count of the indictment, an intent to utter was not a prerequisite for a finding of guilt. The court thereupon charged as follows: "The possession of the stamps you could find if you concluded from the evidence that this defendant was in possession of these stamps alone."

Effectually, the court said only that "possession," an integral element of the offenses charged in the third and fourth counts of the indictment, means "possession." In this respect, the charge cannot be considered very enlightening. Under the facts of this case was it incumbent upon the court to spell out the component parts of the word?

Had the jury believed the defense, no such elaboration would have been necessary. In denying all connection with the room in which the stamps were found, appellant perforce took the position that the contents of the closet were unknown to him.

■ The theory of the prosecution, however, did make it essential that the jury have a clear apprehension of the meaning of the word. To establish appellant's guilt, the government had to prove beyond a reasonable doubt that ap-

pellant rented the room. Possession involves power of control and intent to control. Cf. United States v. Russo, 1941, 3 Cir., 123 F.2d 420, 422. The government did introduce sufficient evidence of a circumstantial nature from which the jury, properly instructed, could infer that appellant had such "possession." The difficulty, however, is that the jury was not so instructed. Conceivably, on the basis of the testimony, the jury, without considering the question whether or not appellant had culpable knowledge of the stamps, might have believed conviction necessary, because appellant had rented the room. Under ordinary circumstances the charge of the court as to "possession" would have been sufficient but here the circumstances are somewhat unusual. We think the trial court should have charged the jury that, if they found beyond a reasonable doubt that the defendant had control of the room and of the closet, they would be entitled to infer that he had possession of the stamps.

■ The foregoing error, which we deem to be of substantial and prejudicial nature, requires the granting of a new trial. It would not be inapposite to add a word of caution upon another question raised upon this appeal. Appellant avers that the trial judge tended, in his charge to the jury, to treat government testimony as fact and defense testimony as mere allegations subject to jury belief or disbelief. Our reading of the court charge discloses that, although the jury was told to disregard any recollections of the trial judge in disagreement with its own, there is some merit in the appellant's contention. For example, a witness called by defendant testified that one Cox, a deputy marshal, was present at the store where appellant was accosted by the federal agents. On rebuttal, the government called Cox, who testified that he was never there. This conflict was recited in the court charge as follows: "You remember how positive he [defendants' witness] was about Mr. Cox, our[4] deputy marshal being present in the store,

standing there talking, and everything else about their talking. *Mr. Cox was never in the store.*" (Emphasis added.) A jury hearing this might well conclude that the credibility of the witnesses was not a problem for the jury. We recognize the right of the judge to comment on the evidence and to give his personal opinion thereon, but this prerogative must be so exercised as to leave no doubt in the jurors' minds that the final determination of the facts rests with them. Cf. United States v. Gollin, 1948, 3 Cir., 166 F.2d 123, 126, certiorari denied 1948, 333 U.S. 875, 68 S.Ct. 905.

The judgment of conviction will be reversed and the cause remanded for a new trial.

McLAUGHLIN, Circuit Judge (dissenting).

I agree that the present conviction is not barred by the doctrine set forth in Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237.

I do not agree that the trial court committed reversible error in defining "possession".

The indictment originally contained four counts. The trial court directed a verdict in favor of appellant on Counts One and Two. The Third Count charged possession by appellant of certain counterfeited ration stamps. The Fourth Count charged possession of the same stamps with intent to utter them.

In this case there was evidence that the back room of the second floor of the house in question was rented to appellant. He gave $10 a week for it though the requested rent was only $8. At the time of the rental there was no lock on the closet door within the room. Later, during the rental by appellant, the landlord noticed that a lock had been put on the door. There was also evidence that appellant was seen entering and leaving the particular house. There was testimony that while the appellant was in custody and as he was being brought to the said house, one of the officers following closely behind him heard something jingle. Check-

---

[4] Designation of Mr. Cox by the definite article rather than the possessive adjective would probably have been more appropriate.

ing this, he picked up a key. The key fitted the closet door lock. The closet contained a large quantity of counterfeited ration stamps, including those mentioned in the indictment.

The basis of the majority opinion is the holding that the jury was not told that possession included control.

The trial judge at the outset of his charge read to the jury Counts Three and Four of the indictment which were the two then remaining counts. The pertinent language of the possession count so read was, "The defendant, * * * wilfully and unlawfully possessed and *controlled* certain counterfeited ration documents * * *." (Emphasis added.) The indictment was in evidence and went to the jury. Later in the charge, after the request to charge "as to possession under this Act, and·what possession means under the facts of this case", the court said:

"You will observe that the third count charges the possession of the stamps and the fourth count charges the defendant with *possession with intent to utter* the stamps. The possession of the stamps you could find if you concluded from the evidence that this defendant was in possession of these stamps alone; in that case he would be found guilty on Count 1 [3] alone. If, however, you have concluded that he was in possession of the stamps, and from the evidence you concluded that he intended to utter them, then he would be, and you could properly find him, guilty on Count 4 likewise.

"Mere possession of and by itself would not weigh against him on that fourth count because there you did not find that he intended to utter them, but I say to you again, that there is evidence sufficient for you to pass upon here on both counts, and for that reason I am submitting the entire matter to you."

In the body of the charge where the trial judge was discussing the presumption of innocence, he stated that such presumption would remain with the defendant "throughout the entire trial of this case, until the presumption is removed by evidence that convinces you beyond a reasonable doubt that he is guilty of *the offenses charged*." (Emphasis added.)

It seems to me that under the facts the above presentation fairly apprised the jury that proof of appellant's control of the stamps was necessary in order to convict him. The court might perhaps have restated the language of the indictment; but in adhering to the latter's exact phraseology and forcibly stressing that, for a conviction, the evidence must be convincing beyond a reasonable doubt of guilt "of the offenses charged", the jury was told that both possession and control must be found to exist before there could be a verdict of guilty. The reason assigned by the majority is not the substantial error that would justify reversal of this judgment of conviction.