**Fred John COREY and Mary Carolyn Fulghum, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 17566.**

United States Court of Appeals Ninth Circuit.

June 15, 1962.

Rehearings Denied July 12, 1962 and Aug. 1, 1962.

Birenbaum, Anderson & McClelland, David B. Birenbaum, and Allen E. Anderson, San Francisco, Cal., for appellants.

Cecil F. Poole, U. S. Atty., Jerrold Ladar and Laurence E. Dayton, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before POPE, BARNES and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

The defendants were tried before a jury and convicted of violating the Mail Fraud Act (18 U.S.C. § 1342) and the National Stolen Property Act (18 U.S.C. §§ 2314 and 2315), and of conspiring to violate those Acts (18 U.S.C. § 371). They have appealed, urging error in the admission of certain evidence and insufficiency of the evidence as a whole. We affirm.

The evidence may be summarized as follows:

A large quantity of jewelry was stolen from a jewelry store in Las Vegas, Nevada on May 31, 1960. On June 20, 1960, defendants Mary Fulghum and Fred Corey were seen together at the Las Vegas Airport. After a brief conversation, they separated. Mrs. Fulghum started

toward her car in the parking lot. Corey went to the baggage checking counter and picked up a suitcase. At that point both defendants were arrested by Las Vegas police. The suitcase was opened with a key taken from Corey's pocket. It contained part of the stolen jewelry.

Asked if he had "any more of this same merchandise," Corey denied that the jewelry belonged to him, and stated "I have never seen it before in my life." Mrs. Fulghum said nothing. Both were taken to the police station and questioned.

A month later, on July 20, 1960, Mrs. Gertrude Orem of San Jose, California received a telephone call from Mrs. Fulghum, whom she had known for some years. Mrs. Fulghum said that she was in the nearby town of Campbell, California, and was going to Los Angeles that evening. She told Mrs. Orem that she had a package for a friend named "Lee Roberts" and that she had looked in the telephone book for his address but could not find it. She asked Mrs. Orem if she could send the package to "Lee Roberts" at Mrs. Orem's address. Mrs. Orem agreed.

The following morning "Lee Roberts" called Mrs. Orem and asked if she had received a package for him. He called again that afternoon and the following morning. The next afternoon he appeared at Mrs. Orem's home. Mrs. Orem testified that the man who came to her home and identified himself as "Lee Roberts" was the defendant Fred Corey. He asked Mrs. Orem if the package had arrived and was told that it had not. He expressed surprise since, as he said, it had been sent by air mail. When Mrs. Orem pointed out that there was no air mail between Campbell and San Jose, he responded "perhaps it was sent from Las Vegas." Mrs. Orem offered to forward the package if it arrived. "Lee Roberts" gave her an address written on a page torn from a notebook. The notebook was found in Corey's possession after his arrest.

It subsequently appeared that the San Jose Post Office had received a package addressed to "Lee Roberts" at Mrs. Orem's house number but on another street. There was no such house number on the street given in the address. The address on the package was meaningless; it directed the package to a non-existent place.

However, the Post Office found a person named "Lee Roberts" listed at still another address and delivered the package to him. He opened the package and upon discovering its contents turned it over to the San Jose police. The package contained jewelry stolen in the Las Vegas robbery of May 31st. The parcel was postmarked at Hollywood, California, on July 21st. It bore a fictitious Los Angeles return address.

After recovering the jewelry, San Jose police established a watch at the forwarding address given to Mrs. Orem by "Lee Roberts." Corey appeared, and was arrested. Corey told the police that he knew nothing about the name "Lee Roberts" or about any package that was to be sent to him or to "Lee Roberts," that he had never been at Mrs. Orem's house and that he had never talked with Mrs. Orem.

We limit our consideration to the conviction under count four. The questions raised by the defendants which seem to us to merit discussion arise under this count of the indictment. The sentences of each defendant on all counts run concurrently and none exceeds the sentence on count four.

Count four charged that defendants caused the jewels to be concealed knowing them to be stolen, in violation of 18 U.S.C. § 2315. It further alleged that the property "constituted interstate commerce" in that it had been transported into San Jose, California, from Las Vegas, Nevada.

The contested elements of the offense are concealment, the required relationship to interstate commerce, and knowledge that the property was stolen. It is argued that the evidence was insufficient with respect to each defendant and

as to each of these elements of the offense.[1]

It is defendants' position that since there is no evidence that they ever possessed the jewelry, they cannot be said to have concealed it. However, it is enough if they aided and abetted others in the concealment of the jewelry, or caused it to be done.[2] The evidence was sufficient for the jury to conclude that both defendants participated in a scheme to ship the jewelry to Corey under an assumed name at an innocent address not connected with the defendants. The only possible purpose and (if successful) the necessary effect of these acts would have been to conceal the jewelry from law enforcement officials who might have been watching Corey's own address in anticipation of the possible appearance of more of the jewelry from the Las Vegas robbery. This would seem to us to constitute a concealment of the jewelry by the defendants within the ordinary meaning of those words.

18 U.S.C. § 2315 is violated only if the things concealed are "moving as, or * * * a part of, or * * * constitute interstate or foreign commerce." Count four alleged that the jewelry concealed "constituted interstate commerce in that it had been transported into the City of San Jose from Las Vegas, Nevada * * *."

The government's evidence established that the jewelry was stolen in Las Vegas on May 31st and mailed from Los Angeles to San Jose on July 21st. Defendants argue that the natural inference from these facts is that the jewelry came to rest in California prior to its transportation from Los Angeles to San Jose, and that the government therefore failed to discharge its burden of proving that the movement in which the concealment occurred constituted interstate commerce.

The origin of the jewelry was Las Vegas, Nevada; its ultimate destination was at least as distant as San Jose, California. Corey's remark to Mrs. Orem that the package might have been "sent from Las Vegas," suggested that Los Angeles was only a point of transshipment in a continuous interstate journey. The jury might well have concluded that the hazardous journey would not have been begun until it could be completed without substantial interruption.[3] There was nothing in the evidence to indicate the contrary.

Once an interstate journey has begun, the question of whether it has come to an end is generally one of fact for the jury.[4] The jury may find that property remained in interstate commerce although it has passed its initial stopping place within the state of destination.[5] This is true despite proof that the goods

1. It was not contended that the jewelry was worth less than $5,000, the jurisdictional minimum.

2. 18 U.S.C. § 2. The principle is frequently applied to kindred offenses under 18 U.S.C. § 2314. See, for example, Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954). Cf. Popeko v. United States, 294 F.2d 168, 170 (5th Cir. 1961); Bartholomew v. United States, 286 F.2d 779, 780 (8th Cir. 1961); Baty v. United States, 275 F.2d 310 (9th Cir. 1960).

3. Similarly, where a sale of stolen goods is involved, the jury may reasonably infer that the property was transported from the place of theft in one state to the place of sale in another state "at or about the time they were sold." United States v. Rocco, 99 F.Supp. 746, 749 (W.D.Pa.

1951), opinion adopted 193 F.2d 1008 (3d Cir. 1952), cert. denied 343 U.S. 927, 72 S.Ct. 761, 96 L.Ed. 1338. See also Schwachter v. United States, 237 F.2d 640, 644 (6th Cir. 1956).

4. Pilgrim v. United States, 266 F.2d 486, 488 (5th Cir. 1959); Schwachter v. United States, 237 F.2d 640, 644 (6th Cir. 1956); Parsons v. United States, 188 F.2d 878, 879 (5th Cir. 1951); United States v. Gollin, 166 F.2d 123 (3d Cir. 1948), cert. denied 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151.

5. Pilgrim v. United States, 266 F.2d 486, 488 (5th Cir. 1959). See also United States v. Gollin, 166 F.2d 123, 125 (3d Cir. 1948), cert. denied 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151; Schwachter v. United States, 237 F.2d 640, 644 (6th Cir. 1956); McNally v. Hill, 69 F.2d 38,

traveled a circuitous route,[6] or lack of proof as to the precise means of interstate transportation utilized.[7] Goods have been found to continue in interstate commerce despite a lapse of time between theft in one state and appearance in another state which exceeded the time between these two events in the present case.[8]

It is immaterial that defendants' concealment of the property was confined to a portion of the interstate journey which occurred wholly within a single state.[9] And it would have been unnecessary to show that defendants knew that the goods were or had ever been in interstate commerce.[10]

The facts established by the government must permit reasonable men to infer that the affected property remained in interstate commerce at the time it was concealed. But it is not necessary that the government's proof exclude every speculative possibility that the transportation may have been interrupted at some point within the state of destination in such a way as to bring the interstate journey to an end and render subsequent movement within that state local commerce. On the basis of the evidence in the present record and reasonable inferences therefrom the jury could have concluded that at the time the defendants concealed the jewelry it "constituted interstate commerce" moving without substantial interruption from Las Vegas, Nevada to San Jose, California. The evidence was not insufficient merely because the jury might have drawn different inferences or arrived at a different conclusion.[11]

Finally, it seems to us that "the circumstances of this case fairly bring into play the familiar doctrine in criminal cases that 'it is not incumbent on the prosecution to adduce positive evidence to support a negative averment the truth of which is fairly indicated by established circumstances and which if untrue could be readily disproved by the production of documents or other evidence probably within the defendant's possession or control.'"[12] The government's evidence fairly indicated a continuous movement of jewelry in interstate commerce from Las Vegas, Nevada to San Jose, California. It was not incumbent on the government to offer positive evidence of the negative proposition that the jewelry did not come to rest in Los Angeles or elsewhere on the journey where, as here,

40–41 (3d Cir. 1934), aff'd 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934).

6. Barfield v. United States, 229 F.2d 936, 939 (5th Cir. 1956).

7. Pereira v. United States, 347 U.S. 1, 9, 74 S.Ct. 358, 98 L.Ed. 435 (1954). In Pines v. United States, 123 F.2d 825 (8th Cir. 1941), relied upon by defendants, there was no proof that the property had moved in interstate commerce except the uncorroborated admissions of the defendant after the fact.

8. See e. g., United States v. Rocco, 99 F. Supp. 746, 749 (W.D.Pa.1951), opinion adopted 193 F.2d 1008 (3d Cir. 1952), cert. denied 343 U.S. 927, 72 S.Ct. 761, 96 L.Ed. 1338.

9. See Barfield v. United States, 229 F.2d 936, 939 (5th Cir. 1956), involving a charge of transportation of stolen property in interstate commerce.

10. Pilgrim v. United States, 266 F.2d 486, 488 (5th Cir. 1959); Brubaker v. United States, 183 F.2d 894, 898 (6th Cir. 1950); United States v. Tannuzzo, 174 F.2d 177, 180 (2d Cir. 1949), cert. denied 338 U.S. 815, 70 S.Ct. 38, 94 L.Ed. 493; Donaldson v. United States, 82 F.2d 680, 681 (7th Cir. 1936).

11. See Murdock v. United States, 283 F.2d 585, 586–587 (10th Cir. 1960), cert. denied 366 U.S. 953, 81 S.Ct. 1910, 6 L.Ed.2d 1246, and Cunningham v. United States, 272 F.2d 791, 795 (4th Cir. 1959), involving jury inferences that defendant moved stolen property in interstate commerce. This is but an application of the general rule. See, e. g., Stoppelli v. United States, 183 F.2d 391, 393 (9th Cir. 1950), cert. denied 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631.

12. United States v. Fleischman, 339 U.S. 349, 360–361, 70 S.Ct. 739, 94 L.Ed. 906 (1950).

the evidence showed the defendants' relationship to the movement of the jewelry to be such that if the interstate journey had ended prior to the arrival of the property at San Jose evidence to prove that fact was probably available to them.

 We turn to the adequacy of the proof of guilty knowledge. The government was required to prove that the defendants knew that the jewelry was stolen. Possession of recently stolen property will support an inference that the possessor was the thief, and, *a fortiori*, that he knew that the property was stolen.[13] It is true, as the defendants point out, that there was no evidence that they had had physical possession of the lot of jewelry to which the present charges relate. However, we would think that Corey's physical possession of one portion of the jewelry stolen in a single theft, even if it stood alone, would justify an inference of knowledge on his part that the whole was stolen.[14]

 In any event a defendant's knowledge that property was stolen "may be inferred from circumstances that would convince a man of ordinary intelligence that this is the fact." [15] Corey's earlier possession of another portion of the stolen jewelry was in any case a circumstance relevant to his knowledge that the jewelry in the San Jose package was stolen. The fact that the evidence connected him with the loot from a single robbery not once but twice on occasions widely separated in time and space was inconsistent with coincidence and strongly suggested knowing involvement. The elaborate efforts to conceal,[16] the use of assumed names,[17] and the explanations inconsistent with objective circumstances clearly indicating their falsity [18] were

13. Barfield v. United States, 229 F.2d 936, 939 (5th Cir. 1956); Pearson v. United States, 192 F.2d 681, 689 (6th Cir. 1951). It is the rule in this Circuit that the jury may infer from possession of property recently stolen in another state not only that the defendant was the thief, but also that he transported the property in interstate commerce. Grover v. United States, 183 F.2d 650 (9 Cir. 1950); Morandy v. United States, 170 F.2d 5 (9 Cir. 1948), cert. denied 336 U.S. 938, 69 S.Ct. 741, 93 L.Ed. 1097. See also Murdock v. United States, 283 F.2d 585, 586–587 (10th Cir. 1960), cert. denied 366 U.S. 953, 81 S.Ct. 1910, 6 L.Ed.2d 1246; United States v. Borda, 285 F.2d 405, 407 (4th Cir. 1961), cert. denied 365 U.S. 844, 81 S.Ct. 804, 5 L.Ed.2d 810. But cf. Booth v. United States, 154 F.2d 73 (9 Cir. 1946).

14. Pearson v. United States, 192 F.2d 681, 697 (6th Cir. 1951). As defendant Fulghum properly suggests, her mere association with defendant Corey at the Las Vegas Airport would not charge her with his guilty possession of the jewelry absent proof that the possession was joint. Ong Way Jong v. United States, 245 F.2d 392, 394 (9th Cir. 1957); United States v. O'Brien, 174 F.2d 341, 345 (7th Cir. 1949).

15. Melson v. United States, 207 F.2d 558, 559 (4th Cir. 1953). See also Pilgrim v. United States, 266 F.2d 486 (5th Cir. 1959); United States v. Slaughter, 255 F.2d 770, 771 (7th Cir. 1958).

16. See United States v. Leggett, 292 F.2d 423, 426–427 (6th Cir. 1961), cert. denied 368 U.S. 914, 82 S.Ct. 194, 7 L.Ed.2d 131; United States v. Rocco, 99 F.Supp. 746, 748 (W.D.Pa.1951), opinion adopted 193 F.2d 1008 (3d Cir. 1952), cert. denied 343 U.S. 927, 72 S.Ct. 761, 96 L.Ed. 1338.

17. See Herman v. United States, 289 F.2d 362, 367 (5th Cir. 1961); Kreuter v. United States, 201 F.2d 33, 36 (10th Cir. 1952).

18. Wilson v. United States, 162 U.S. 613, 620–621, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); United States v. Kessler, 253 F.2d 290 (2d Cir. 1958); United States v. Simone, 205 F.2d 480, 483 (2d Cir. 1953), and authorities cited. See also Holt v. United States, 272 F.2d 272, 275–276 (9th Cir. 1959); Andrews v. United States, 157 F.2d 723, 724 (5th Cir. 1946), cert. denied 330 U.S. 821, 67 S.Ct. 771, 91 L.Ed. 1272; Beck v. United States, 78 U.S.App.D.C. 10, 140 F.2d 169, 170 (1943), and Seeman v. United States, 96 F.2d 732 (5th Cir. 1938), cert. denied 305 U.S. 620, 59 S.Ct. 80, 83 L.Ed. 396, reaching the same result with respect to apparently false explanations by defendant in testifying at the trial.

also commonly recognized "badges of fraud" [19] from which the jury could infer Corey's guilty knowledge.

The evidence with respect to Mrs. Fulghum's state of mind differed only in degree. Although she was not in possession of the first lot of jewelry, she was present when it was seized at the Las Vegas Airport and must have known of its illicit character from the questioning of police. She too was connected with the second lot of jewelry two months later and four hundred miles away. It was she who called Mrs. Orem. Her participation in the scheme to conceal the movement of the jewelry by using assumed names and an innocent "drop," though limited to a single phone call, was neither inconsequential nor equivocal. It was both vital to the scheme and by its nature inconsistent with innocent unawareness.

■ We conclude that the evidence tending to prove each of the elements of the offense charged in count four, as to each defendant, was sufficient to support the verdict of the jury.

■ The defendants objected to the admission of testimony regarding their arrest at the Las Vegas Airport. They argue that the incident was irrelevant since the jewelry involved was not the jewelry which was the subject matter of this indictment. We have indicated the relevance of evidence of this incident to the issue of defendants' knowledge that the second lot of jewelry from the same robbery was also stolen. We think defendants' argument goes not to the admissibility of the evidence but only to its weight.

■ Defendants further argue that, in any event, Corey's statement that the jewelry in the suitcase did not belong to him and that he had never seen it before was inadmissible hearsay. Taken as true, his explanation reflected only innocent ignorance and was scarcely prejudicial. Taken as patently false, it was probative of guilty knowledge, and properly receivable against Corey himself.[20]

Since the District Court was not asked to admonish the jury that Corey's remarks were not evidence against Mrs. Fulghum, she cannot now complain.

The judgment is affirmed.

---

19. United States v. Leggett, 292 F.2d 423, 426–427 (6th Cir. 1961), cert. denied 368 U.S. 914, 82 S.Ct. 194, 7 L.Ed.2d 131.

20. See note 18, supra. False exculpatory explanations made to investigating officers by a defendant are to be distinguished from flat denials of accusatory statements. If the accusation is simply denied, the accusatory statement is inadmissible hearsay. IV Wigmore, Evidence, § 1072 (5) (3d Ed. 1940).