Adrian Charles **PILGRIM**, Dave Williams
and Claude E. Coleman, Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 17352.

United States Court of Appeals
Fifth Circuit.

May 13, 1959.

James Maddox, Rome, Ga., A. Cecil Palmour, Summerville, Ga., Bobby Lee Cook, Summerville, Ga., for appellants.

Ralph Ivey, James W. Dorsey, Atlanta, Ga., Charles D. Read, Jr., Acting U. S. Atty., Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

These are two separate appeals—one by Pilgrim, and the other by Williams and Coleman—from convictions under the Dyer Act, 18 U.S.C.A. § 2311 et seq.

The appellants and one other, Billy Johnson, were tried under a three count indictment charging: (1) that the appellants, Billy Johnson, and William Howard Johnson conspired to transport in interstate commerce, and receive, conceal, store, barter, sell and dispose of a stolen motor vehicle in violation of 18 U.S.C.A. § 371 in connection with 18 U. S.C.A. §§ 2312, 2313; (2) that they, aided and abetted by each other, caused a stolen motor vehicle to be transported in interstate commerce in violation of 18 U.S.C.A. § 2312; (3) that they did receive, conceal, barter, sell and dispose of a stolen motor vehicle in violation of 18 U.S.C.A. § 2313. The district court acquitted Pilgrim on the first two counts.

The jury returned a verdict of guilty on all three counts as to Williams and Coleman (and Billy Johnson, who is not a party on appeal), and a verdict of guilty on the third count as to Pilgrim. We affirm.

All three appellants argue that the evidence was insufficient to support the verdict. The government built a strong circumstantial case against Pilgrim. The government had direct evidence against Williams and Coleman. As we view the record, there is substantial evidence to support the verdict.

W. H. Johnson, the co-conspirator, testified that in Dallas, Texas, December, 1956, he asked the defendant Billy Johnson where he could dispose of a stolen 1951 Mercury. Billy Johnson told him that he had a friend in Cedartown, Georgia, who would buy it for $150. Because of the small amount of money involved, W. H. Johnson decided not to take the car to Cedartown. The next morning Billy Johnson told him that he could get $300 to $400 for a large new car.

W. H. Johnson agreed to steal a large new car. He did—a yellow and white 1957 "98" model Oldsmobile. Billy Johnson gave him the names of Williams and Coleman in Cedartown who would be willing to buy the car. W. H. Johnson left Dallas in the stolen car December 19, 1956 and arrived in Cedartown about December 21. Enroute he made long distance telephone calls to Williams and Coleman. At Jackson, Mississippi, he sold the spare tire for fifteen dollars and a tank of gas. When he reached Cedartown, Coleman told him that Williams was in the hospital. At the hospital, Williams told him to go back to "his place", a barbecue restaurant, park behind it, and Coleman would "pay you off". Later, after talking with Williams, Coleman told Johnson to take the Texas license plates off the car. Coleman then paid him $300 for the car. Johnson took a cab from Cedartown to Atlanta, a bus from Atlanta to Memphis, and a plane to Dallas.

Pinkston, an FBI agent, testified that in April, 1957, defendant Billy Johnson had informed him that W. H. Johnson had questioned him about disposing of stolen cars, and he advised him to go to Cedartown. Other witnesses saw W. H. Johnson in Cedartown in the stolen car.

FBI agent Holmes testified that he saw Pilgrim in the stolen car in Cedartown on January 22, 1957. Pilgrim told Holmes that he bought the car in Tallapoosa, Georgia, December 22, 1956, the day after the car arrived at Cedartown, from "Donald L. Raburn". "Raburn" may or may not have existed; he was never found. The place where he is supposed to have worked was fictitious. The bill of sale, except for "Raburn's" signature, was written by Pilgrim. Pilgrim did not ask "Raburn" for proof of ownership, or for identification. Pilgrim had known Williams and Coleman for about five years. He denied purchasing the car from them.

█ We think that the evidence offered against Williams and Coleman was sufficient to support the verdict. "It is our opinion that a mere recital of the facts of this case discloses ample evidence to sustain the conviction." United States v. Gordon, 3 Cir., 1957, 242 F. 2d 122, 125, certiorari denied 354 U.S. 921, 77 S.Ct. 1378, 1 L.Ed.2d 1436.

█ Pilgrim contends that there is no evidence to sustain a finding that he knew the car was stolen. The government's case was built on circumstantial evidence. There is no doubt that knowledge "may be inferred from circumstantial evidence." United States v. Bucur, 7 Cir., 1952, 194 F.2d 297, 301. In Kelly v. United States, 4 Cir., 1921, 277 F. 405, 408, the accused gave a strikingly similar explanation concerning his possession of the stolen car. He also denied there was evidence that he knew the car was stolen. The court held that the trial court's refusal to direct a verdict for lack of proof of guilty knowledge was not error. "In our judgment", the court said, "it [the evidence] was clearly sufficient to make a case for the

488

jury to determine whether defendant bought and transported the car in question, 'knowing the same to have been stolen,' * * * ". Pilgrim had possession of the stolen car the day after W. H. Johnson delivered it to Williams and Coleman. He told his story. Pilgrim's story was, along with all the other evidence, for the jury. "Possession of the fruits of crime recently after its commission justifies the inference that the possession is guilty possession, and, though only prima facie evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence. It is a question for the jury whether the inference of appellant's guilty reception of the automobile was overcome by the explanation." Loftus v. United States, 7 Cir., 1931, 46 F.2d 841, 845.

Pilgrim contends also that the car's journey in interstate commerce terminated before he made the purchase and there was no evidence that he knew the car had been transported in interstate commerce. But whether an automobile is in interstate commerce when received and concealed is a question of fact for the jury. The car was transported from Dallas, Texas, to Cedartown, Georgia, and the very next day Pilgrim bought it in Tallapoosa. There is no reason why the interstate movement of the car should be cut off at Cedartown, as Pilgrim argues. In Schwachter v. United States, 6 Cir., 1956, 237 F.2d 640, 644, the court struck at the heart of the argument Pilgrim makes:

> "It is recognized that the interstate movement of a car does not necessarily cease when the car stops and transportation of it into another state ends. The sale thereafter may be incident to the theft and transportation and so tied up with it as to constitute the final step of the continuous unlawful scheme."

And the fact that Pilgrim might have been unaware that the stolen car was transported in interstate commerce is not vital. The Dyer Act is violated when one receives a stolen automobile with knowledge of its theft even if he is unaware that it has been transported in interstate commerce. Brubaker v. United States, 6 Cir., 1950, 183 F.2d 894, reversed on another point.

Williams and Coleman also have urged other grounds for reversal on appeal relating to the admission of certain evidence and the court's recharge to the jury on circumstantial evidence. We have considered these grounds and find them to be without merit.

The judgment is

Affirmed.