**Sylvester ALEXANDER, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 22191.**

United States Court of Appeals
Fifth Circuit.

Dec. 10, 1965.

---

Fred C. Sexton, Shreveport, La., for appellant.

Edward L. Shaheen, U. S. Atty., Shreveport, La., Q. L. Stewart, Asst. U. S. Atty., Western Dist. of Louisiana, for appellee.

Before JONES, WISDOM and GEWIN, Circuit Judges.

JONES, Circuit Judge.

During a remodeling of the banking premises of the Bossier (Louisiana) Bank and Trust Company, a shortage of $6,500 in twenty dollar bills from a teller's cage was discovered after the teller returned from lunch on February 2, 1962. The appellant, Sylvester Alexander, and his friend and cousin, James Edward Pickens, were charged by a three count indictment in which both were accused by the first count with conspiring, on or about February 1, 1962, to enter the bank with intent to commit larceny. The second count charged Alexander with entering the bank on or about February 2, 1962, with intent to commit larceny, and the third count charged Pickens with a like crime. Pickens entered a plea of guilty to the conspiracy charge and count three was dismissed.

On the trial of Alexander employees of the bank testified as to the teller's shortage occurring during his lunch period on February 2, 1962, and that the shortage was in twenty dollar bills. Several bank employees and an employee of the contractor who was doing the remodeling job testified as to seeing a slender dark-skinned Negro emptying waste baskets and cleaning up in the teller's cage on February 2, 1965. Some of them said the dark-skinned Negro had a moustache. Most of them testified that the man they saw in the bank resembled Alexander. None of those who saw the slender, dark-skinned Negro on February 2 was willing to state that Alexander was the man they saw.

David Morris, a witness for the Government, is identified in the Government's brief as a colored porter employed by the bank. He testified that around noon on February 1, 1962, he saw Alexander in a hallway of the bank with a window-washer's bucket and stick. This is the only positive identification of Alexander that placed him in the bank building and it on a day earlier than the occurrence of the shortage, and in a portion of the bank building other than the banking room.

The opening statement of Government counsel is not in the record. It should have been. 28 U.S.C.A. § 753(b); Fowler v. United States, 5th Cir. 1962, 310 F.2d 66; Stephens v. United States, 5th Cir. 1961, 289 F.2d 308. Elsewhere in the record it is shown that in his opening statement the prosecutor announced that one of his witnesses would be Pickens. During the trial Government counsel stated that he had intended to use Pickens as a witness because of a signed statement he had given the F.B.I., as well as other information "which linked Pickens and Alexander together in the conspiracy charged and as to which Pickens entered a plea of guilty." Counsel went on to say that Pickens had repudiated the conspiracy with Alexander and this, coupled with Pickens' signed confession required the Government to move for an order permitting Pickens to be called as a hostile witness. The court granted the motion. Pickens was sworn, gave his name and address, admitted that Alexander was his cousin and his friend, and declined to answer any question about the bank or its money on the ground that his answers might be incriminating. While attempting to elicit information from Pickens, Government counsel, apparently reading, said, "On Friday morning at approximately nine A.M. on February 2, 1962, Sylvester Alexander * * *" The court interrupted with "Wait a minute. Don't read any part of the confession." The jury was instructed to disregard the statement just made. At the suggestion of the court the Government introduced a copy of the minutes of the court showing Pickens' plea of guilty to the first count of the indictment charging him, jointly with Alexander, of conspiracy. The jury was told that count two against Pickens had been dismissed.

Thurman P. Kelley, an F.B.I. agent, testified for the Government. He told of receiving from a police officer two apparently new twenty dollar bills which had been found on Alexander when he was arrested. He told of receiving a signed statement from Pickens and reference was made to the plea of guilty which Pickens had made to the conspiracy charge. He related a search made of Pickens' residence and the finding there of $780 in apparently new twenty dollar bills. The first six of the eight digits of the serial numbers of this currency were the same as the first six digits of the serial numbers of the bills taken from Alexander. All of the currency was received in evidence. The agent was asked whether he acquired information as to where the money came from that he found in Pickens' house. Over objection he was permitted to quote Pickens as saying that "It came from Sylvester Alexander." After the answer another objection was interposed and the court sustained the objection and instructed the jury to disregard the answer. The agent was the last witness for the Government. A motion for a directed

verdict was denied. The defense offered no testimony. The day was Friday and the court adjourned until Monday.

When the court resumed on Monday morning the court, out of hearing of the jury, made the following announcement:

"After reflecting upon this case over the weekend, the Court has concluded that it was in error in admitting evidence as to the participation of James Edward Pickens in this matter, particularly insofar as the judgment of commitment based upon his plea of guilty on November 30, 1964 was admitted into evidence and read to the jury.

"Inasmuch as Pickens took the Fifth Amendment as to practically all questions asked him and there is no other evidence of a conspiracy and because the Court also is convinced that the written confession given by Pickens to the FBI Agents was not a proper subject of inquiry, and for the additional reason that counsel for the Government was fore-warned that Pickens retracted his confession, the Court feels compelled to direct a verdict of acquittal as to count 1 insofar as it affects the defendant Alexander but will allow to stand count 2, which is the entering of the bank with intent to commit larceny."

\* \* \* \* \* \*

"The Court will recall its former order denying such motion and instruct the jury to disregard completely any and all evidence as to the conviction of Pickens on his plea of guilty and any questions with respect to his written confession which were propounded to him and to Agent Kelley on the witness stand."

The jurors were returned to the court room and the court continued:

"Members of the jury, in connection with your consideration of the evidence in this case, the Court has concluded as a matter of law, based upon the evidence which was adduced in this case that the Court committed error last week when we admitted into evidence the judgment of conviction of James Edward Pickens and any evidence as to a statement he might have made to the FBI.

"The law is that such evidence, insofar as Alexander is concerned is hearsay. It is, therefore, inadmissible.

"For that reason the Court is going to grant the defendant's motion made by his counsel last week for a directed verdict of acquittal with respect to the first count, and the first count only, of the indictment. That is the so-called conspiracy count.

"The jury is instructed, and you are bound to follow this instruction just as you are all of the Court's instructions on the law, that you are to completely disregard the evidence which we have just mentioned although you may consider in connection with count 2, which we will allow to stand, which charges the defendant Alexander with having entered the bank on or about February 2, with intent to commit larceny in the bank. You may consider the evidence which was adduced by the Government with respect to the two $20.00 bills which were taken from Alexander upon his arrest and the thirty-nine $20.00 bills which were taken from Pickens upon his arrest.

"Particularly in that connection, you may consider if you so desire the proximity and similarity of the serial numbers of the two $20.00 bills in connection with two of the thirty-nine bills which were taken from Pickens according to the testimony of Agent Kelley.

"In commenting to this extent, the Court indicates no opinion of its own as to what is or is not a fact. I am simply mentioning these considerations for you to take with you to the jury room. But above all, and in connection with your consideration

of count 2 which still stands against this accused, you will completely forget and put aside and disregard any and all evidence with respect to the alleged conspiracy because we believe the only evidence which the Government offered in that connection was not valid evidence—was not validly admissible under the law relating to hearsay evidence.

"The Court frankly confesses it is mistaken in admitting that evidence and we instruct you most emphatically to disregard that entirely."

Argument of counsel was then made to the jury, the court's further instructions were given, the jury brought in a verdict of guilty on the second count of the indictment and the sentence of the court was given. From that sentence and judgment this appeal has been taken.

█ We reach the conclusion that the conviction must be set aside. We quite agree with the district court that evidence was improperly admitted as to the confession of Pickens and the statements of F.B.I. Agent Kelley with respect to the confession. We think, however, it was error to leave with the jury the evidence as to the thirty-nine twenty dollar bills which were taken from Pickens. Neither these bills nor the two which were taken from Alexander were identified as having been taken from the bank. The bills taken from Pickens were related to Alexander only by the improperly admitted hearsay statement made by Pickens to Agent Kelley that he, Pickens, had received the bills from Alexander. We think it would be difficult for the jurors to determine, from the court's language in withdrawing the confession and the testimony relating to it, just what it might consider and what it should not. But, in our opinion, the harm which had resulted could not have been cured by any admonitory remarks of the court. Before the jury had been placed the facts that Pickens had confessed, that he had implicated Alexander in his confession, that he had said that the currency found in his possession was received from Alexander, and the

further fact that Pickens refused, after being sworn as a witness, to answer questions as to the money missing from the bank. The jurors had heard Government counsel say that he had intended to call Pickens as a witness because of a signed statement which Pickens had given which linked Pickens and Alexander in a conspiracy. We think that all of the matters relating to Pickens, his confession, his statements implicating Alexander, together with the inferences which could have been drawn from his "taking the Fifth", could not have been erased by any judicial admonition. The prejudice was such, in our opinion, as to require a reversal. While it is the general rule that a direction of the court to disregard evidence which was improperly admitted and subsequently excluded will cure the error committed by its admission, where such a strong impression has probably been made on the minds of the jurors by the illegal and improper testimony that the direction to disregard cannot overcome the prejudicial effect of the testimony, the judgment of conviction must be reversed. Mora v. United States, 5th Cir. 1951, 190 F.2d 749. The rule is peculiarly applicable where, as here, there is little other persuasive evidence of guilt.

█ The only positive identification of Alexander was made by the witness Morris, a porter employed by the bank. He saw Alexander, not on February 2, 1962, the day the money disappeared, but on the preceding day. He said he saw Alexander, not in the banking rooms of the bank, but in an adjoining hallway. All of the other witnesses whose testimony was offered for the purpose of establishing identity could go no farther than establishing a resemblance. This Court has announced the following rule:

"While questions of identity are ordinarily for the jury and testimony as to identity need not be positive and certain, * * * there must be something more than the testimony of a resemblance * * *." Hendrix v. United States, 5th Cir. 1964, 327 F.2d 971, 974.

Since it may be that the Government can adduce admissible evidence sufficient to present a jury question as to the guilt or innocence of the appellant, the cause will be reversed and remanded for a new trial; otherwise for the dismissal of the indictment.

Reversed and remanded.