**Eddie ODOM, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 23464.**

United States Court of Appeals Fifth Circuit.

May 2, 1967.

854

Jack F. Wayman, Jacksonville, Fla., for appellant.

William J. Hamilton, Jr., Asst. U. S. Atty., Edward F. Boardman, U. S. Atty., Middle District of Florida, Jacksonville, Fla., for appellee.

Before TUTTLE, Chief Judge, and BELL and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge.

Appellant, Eddie Odom, was charged and convicted by a jury of violating the Dyer Act, 18 U.S.C.A. § 2313 [1] in that he received a 1964 Chevrolet convertible which vehicle was moving as, was part of, and which constituted interstate commerce between Lincolnwood, Illinois, and Duval County, Florida, knowing the same to have been stolen. Tried along with Odom, but acquitted by the jury, was the alleged transporter of the car, one Raymond Stewart.

The automobile, owned by Jerry Potter, was stolen sometime between 4:00 p. m. on September 17, 1964, and 2:00 a. m. on September 18, 1964, from its parking place in front of Potter's place of employment in Lincolnwood, Illinois. Potter testified that he had given no one permission to drive the car, that he reported the loss to the police, and that he next saw his car fifteen days later at the Chicago garage where it was being repaired.

Two police officers out of uniform and in unmarked cars, saw appellant Odom driving a car of similar description in Jacksonville, Florida, on the evening of October 2, 1964. One of the officers, a Sergeant Johnson who knew Odom, pulled alongside and said "Eddie, pull over," at which point Odom accelerated and a high speed chase ensued. After traversing about fifteen blocks, Odom lost control of the car, jumped out, and began to run, but was apprehended at gunpoint by Johnson, the appellant saying, "Okay, you got me." Odom was arrested on minor local charges and for investigation of auto theft, since the vehicle number matched that of Potter's car and there was a 1964 Georgia license in the trunk.

Special Agent Zigrossi of the Federal Bureau of Investigation testified that he interviewed Odom while the latter was in custody concerning the automobile.

[1] § 2313, Sale or receipt of stolen vehicles. Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 806.

No federal charge was lodged against appellant at that time. Odom stated that he had obtained the Chevrolet from an unknown man at Al's Drive-in in Jacksonville on Friday night, October 2, 1964, that he was trying out the car with a view toward purchasing it for $800.00 cash, and that he had first seen the car and its seller on the evening of his arrest. Although he claimed that four persons were witnesses to the manner in which he had obtained possession of the car, he declined to identify them and never produced them at trial.

Odom's statement that he had first seen the car on the night of his arrest was contradicted by two persons. His cousin, Barbara Nell Eaton, testified that she had seen him in a Chevrolet of the same description at least one day prior to his arrest; and a truck driver, Ronald Meisenzahl, further refuted Odom's story. Meisenzahl claimed that he had met with Odom, a man named Jordan, and the co-defendant Stewart at the drive-in one night before Odom's arrest and that Stewart told them he had a car, "hid away." The car, a 1963 Chevrolet, was stuck in the mud, and Stewart said he feared it would be gone since it had been there for several days. According to Meisenzahl, the four men then traveled in Stewart's car to a rather remote area of a nearby county, where they pushed the car out of the mud. Odom drove the car back to Jacksonville and the next day prevailed upon Meisenzahl to allow him to use a license tag from Meisenzahl's car, since the Chevrolet had no tag on it. It was this license plate that was on the car when Odom was arrested. Meisenzahl further testified that he overheard Odom arguing with Stewart about wanting to keep the car, to which Stewart finally agreed. On the basis of this evidence, Odom was convicted of receiving a stolen car which had been transported interstate and which Odom knew to have been stolen.

For a reversal of his conviction, Odom relies on three points of error: (a) that that the evidence is insufficient to sustain his conviction; (b) that the verdicts returned by the jury were prejudicially inconsistent; and (c) that the representation afforded by his court-appointed counsel was so inadequate as to result in denial of "effective assistance" and deprivation of a fair and impartial trial vouchsafed by the constitution. We reject all three, but reverse because of testimonial error.

## I. *Insufficiency of the evidence.*

"The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 1941, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704. Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilt beyond a reasonable doubt. Rua v. United States, 5 Cir. 1963, 321 F.2d 140; Riggs v. United States, 5 Cir. 1960, 280 F.2d 949. In Judge Thornberry's words,

"* * * the standard utilized by this Court is not whether in our opinion the evidence and all reasonable inferences thereform failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury might reasonably so conclude." Williamson v. United States, 5 Cir. 1966, 365 F.2d 12, 14.

A recital of the facts of this case, assuming the jury's verdict rested on those findings which are capable of sustaining the verdict carries conviction. According to the indictment, the government had the burden of proving (1) that appellant received the described vehicle; (2) that such vehicle was moving as interstate commerce at the time it was received; (3) that it had been stolen, and (4) that appellant had the requisite knowledge.

Appellant does not contest the proof that he received the described automobile, since he was undisputedly in possession of the car when arrested in Jackson-

ville on October 3, 1964. He does, however, contend that the evidence is insufficient to prove that the automobile "was moving as, was a part of and which constituted interstate commerce" at the time he received it. This argument runs afoul of Corey v. United States, 9 Cir. 1962, 305 F.2d 232, where the defendant was prosecuted under the National Stolen Property Act (18 U.S.C.A. §§ 2314 and 2315) which contains a similarly worded interstate commerce provision. In that case, jewelry was stolen in Las Vegas, Nevada, and was shipped from Los Angeles, California, to San Jose, California, the defendant being charged with concealing the jewels, knowing them to be stolen. His contention was that the stolen property had come to rest in California prior to its transportation from Los Angeles to San Jose and that it was therefore no longer a part of interstate commerce. In rejecting this argument, the Court stressed the factual nature of such a determination.

"Once an interstate journey has begun, the question of whether it has come to an end is generally one of fact for the jury. The jury may find that property remained in interstate commerce although it has passed its initial stopping place within the state of destination. This is true despite proof that the goods traveled a circuitous route, or lack of proof as to the precise means of interstate transportation utilized. * * *

"It is immaterial that defendants' concealment of the property was confined to a portion of the interstate journey which occurred wholly within a single state. And it would have been unnecessary to show that defendants knew that the goods were or had ever been in interstate commerce.

" * * * [I]t is not necessary that the government's proof exclude every speculative possibility that the transportation may have been interrupted at some point within the state of destination in such a way as to bring the interstate journey to an end and render subsequent movement within that state local commerce. On the basis of the evidence in the present record and reasonable inferences therefrom the jury could have concluded that at the time the defendants concealed the jewelry it 'constituted interstate commerce' moving without substantial interruption from Las Vegas, Nevada to San Jose, California. The evidence was not insufficient merely because the jury might have drawn different inferences or arrived at a different conclusion." Id. at 236–237.

Schwachter v. United States, 6 Cir. 1956, 237 F.2d 640; Parsons v. United States, 5 Cir. 1951, 188 F.2d 878. See Pilgrim v. United States, 5 Cir. 1959, 266 F.2d 486. Judge Hutcheson has indicated the necessity for holding that interstate movement does not automatically cease when a stolen automobile comes momentarily to rest within a state. In Parsons, supra, a Dyer Act prosecution similar to the one at bar, he said:

"The rule contended for by appellant would nullify the statute. It would afford harborage, to receivers of interstate run cars as soon as the cars crossed a state line, if the evidence showed that the fence operations were to be confined to that state and failed to show that the receiver was selected by the runner before the run began." Id. 188 F.2d at 879.

Appellant next questions the sufficiency of evidence to support a finding that the automobile had in fact been stolen. The evidence presented, however, sustains the conclusion that the vehicle was stolen. Mr. Potter testified that the car was taken without his permission, that he reported its theft to the police, and that he next saw it being repaired in Chicago. Moreover, Stewart allegedly said the car was "hid away", and Meisenzahl testified that the car, without license tags, was in a remote place. The contradictory stories given as to the method of purchase and the small price to be paid for the vehicle are further indicia that the car

was stolen and had retained its stolen character.

■ Finally we consider the complaint that the government failed to prove Odom's guilty knowledge and conclude that there was ample evidence on which the jury could base its finding. Odom's unwillingness to identify witnesses to his manner of obtaining the car, his false explanations as to when and how he obtained possession, the small price he said he was to pay for the vehicle, and his conduct when ordered to pull over by police officers are substantial facts which can yield a reasonable conclusion by the jury that Odom knew the car was stolen. Knowledge, it must be remembered, can be established by circumstantial as well as direct evidence. The necessary and applicable scienter of Odom is spelled out in *Pilgrim*, supra, 266 F.2d at 488, where the Court quoted as follows from Loftus v. United States, 7 Cir. 1931, 46 F.2d 841, 845.

" 'Possession of the fruits of crime recently after its commission justifies the inference that the possession is guilty possession, and, though only prima facie evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence. It is a question for the jury whether the inference of appellant's guilty reception of the automobile was overcome by the explanation.' "

See *Schwachter*, supra, 237 F.2d at 643.

■ In *Pilgrim*, supra, a defendant prosecuted under the Dyer Act for receiving a stolen vehicle not only argued that the automobile had ceased to be a part of interstate before he made his purchase, but also contended that there was no evidence that he knew it had ever been in interstate commerce. The Court held that such awareness is not vital to one charged under the Dyer Act, for "[t]he Dyer Act is violated when one receives a stolen automobile with knowledge of its theft even if he is unaware that it has been transported in interstate commerce." Id. 266 F.2d at 488. When reviewing a case, we must assume that the jury's verdict rests on those findings of facts which support the verdict when, as here, the evidence allows such a finding.[2]

## II. *Inconsistent verdicts.*

■ While it may be difficult to comprehend how the jury exculpated Stewart, the alleged initial thief and transporter of the car, while at the same time it convicted Odom for receiving the car from Stewart, appellant argues an anomaly when he questions the consistency of these verdicts. The rendering of inconsistent verdicts has always been an exclusive privilege and prerogative of the jury, and it is not our duty to unravel the ratiocinations of the jury's collective logic. United States v. Dotterweich, 1943, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 49; Dunn v. United States, 1931, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 357; United States v. Lester, 6 Cir. 1966, 363 F.2d 68; United States v. Shipp, 6 Cir. 1966, 359 F.2d 185; Dugan Drug Stores, Inc. v. United States, 5 Cir. 1964, 326 F.2d 835; Hagan v. United States, 5 Cir. 1957, 245 F.2d 556. In the *Dunn* case, supra, the jury, on identical evidence, acquitted the de-

2. THE COURT:
 * * * * *
"With respect to the defendant Odom, the charge that he knew the property was stolen, the Government must either prove his knowledge on his part that it was stolen property, stolen goods, this automobile, if you find that he did receive it at or about the time alleged and at the place alleged, the Government must either prove directly that he had knowledge that it was a stolen automobile, or

the Government must prove the existence of surrounding circumstances surrounding the transaction from which a reasonably prudent and careful person would conclude that it was stolen. In other words, his knowledge may or may not be susceptible of direct proof and proof of knowledge may be supplied by proof of such circumstances as would put a man of ordinary intelligence and caution on inquiry."

fendant of unlawful possession and sale of intoxicating liquor while at the same time it convicted him of keeping such items for sale. Justice Holmes, in rejecting the inconsistency argument, instructed us in these words:

"That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." Id. 284 U.S. 390, 52 S.Ct. 191, 76 L.Ed. at 359.

Odom had no vested right to exact a finding of Stewart's guilt as a prerequisite to his own conviction. In *Dotterweich*, supra, the defendant claimed that having failed to find the corporation guilty of shipping adulterated and misbranded drugs in interstate commerce, the jury was not warranted in convicting him. Mr. Justice Frankfurter, speaking for the Court, succinctly answered such baseless contentions.

"Whether the jury's verdict was the result of carelessness or compromise or a belief that the responsible individual should suffer the penalty instead of merely increasing, as it were, the cost of running the business of the corporation, is immaterial. Juries may indulge in precisely such motives or vagaries." Id. 320 U.S. at 279, 64 S.Ct. at 135, 88 L.Ed. at 50–51.

III. *Representation afforded by counsel.*

■ Stated most precisely Odom herein argues that his lack of competent appointed counsel resulted in denial of "effective assistance" and deprivation of a fair and impartial trial. On appeal, he asks us to evaluate the state of his trial counsel's health and auditory perception and a melange of "he should haves" and "he should not haves", most of which were matters of instantaneous courtroom judgment and trial tactics. We are asked to try Odom's counsel from our unhurried and unharried chambers, removed in time, place and atmosphere from the actual courtroom combat. An analysis of these alleged errors, we conclude, does not add up, nor does it even bring us to the threshold of errors which would violate Odom's constitutional right to effective counsel.

■ A defendant is entitled to the effective assistance of counsel. Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Powell v. State of Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 159. We have found no Supreme Court decision basing a finding of deprivation of a fair and impartial trial on lack of effective appointed counsel, and lower courts have been somewhat less than explicit as to what does and does not constitute effective assistance. It is abundantly clear, however, that the guarantee does not underwrite errorless counsel,[3] or successful counsel,[4] or the best counsel available.[5] It is equally true that errors of judgment and tactical errors on the part of any attorney do not constitute a denial of effective assistance.[6] To be judged ineffective, counsel must have been " * * * so incompetent as to deprive his client of a trial in any real sense—render the trial a mockery and a farce is one descriptive expression." *Mitchell,* supra, 259 F.2d at 793. Only if the attorney's conduct is "shocking to the conscience

3. MacKenna v. Ellis, 5 Cir. 1960, 280 F.2d 592. In this case, Judge Wisdom articulated the standard as follows:
 "We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance." Id. at 599.

4. Johnson v. United States, 8 Cir. 1966, 362 F.2d 43; Mitchell v. United States, 1958, 104 U.S.App.D.C. 57, 259 F.2d 787, cert. denied 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86.

5. Pineda v. Bailey, 5 Cir. 1965, 340 F.2d 162; Moore v. United States, D.C.Cir. 1955, 220 F.2d 198.

6. United States v. Duhart, 2 Cir. 1959, 269 F.2d 113; Mitchell v. United States, 1958, 104 U.S.App.D.C. 57, 259 F.2d 787, cert. denied 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86; Baldwin v. United States, E.D.S.Car.1956, 141 F.Supp. 310.

of the Court" can the charge of ineffective counsel prevail. Scott v. United States, 6 Cir. 1964, 334 F.2d 72, cert. denied 379 U.S. 842, 84 S.Ct. 81, 13 L.Ed.2d 48.

Keeping in mind that Odom's allegations of ineffective assistance must be limited to matters ascertainable from the record, we turn to the facts of the case at bar. Appellant contends that his counsel was derelict in failing to object to questions put by the Court and propounded by the prosecutor and to arguments made by government counsel. At worst, these are tactical errors and are not misconduct amounting to ineffective representation. Counsel's omissions in this case are closely akin to those in Burton v. United States, 1945, 80 U.S.App.D.C. 208, 151 F.2d 17, cert. denied 326 U.S. 789, 66 S.Ct. 473, 90 L.Ed. 479, where appellant alleged that his counsel in a murder trial was incompetent for failing to object to certain testimony and failing to rebut certain evidence. The court rejected these contentions on the ground that they constituted good trial strategy and added:

"But if this assumption were incorrect they would not be ground for reversal. There are few trials free from mistakes by counsel. After judgment and on appeal, errors in judgment as to the conduct of the defense are easy to point out. * * * Under such circumstances it is well settled that error in judgment, incompetency or mismanagement of the defense by counsel is generally not ground for a new trial." Id. at 18.

Moreover, trial counsel's effectiveness in the court below is established by our reversal of this case on a testimonial error to which counsel made timely objection. He who wars must sometimes win and sometimes lose. The Constitution, it must be remembered, commands a battle, but not a victory.

IV. *Testimonial error.*

 The testimony under attack occurred when Sergeant Johnson, one of the arresting officers, was on the stand and was asked how long he had known Odom, to which he replied:

"I had seen Mr. Odom come in and out of jail and spoke with him for approximately a year and a half."

Counsel moved promptly to strike the above quoted testimony and the motion was granted, with the following admonition from the Court:

"THE COURT:

"The statement about seeing him come in and out of jail is not responsive and it's stricken. Don't consider that in arriving at your verdict."

The judge's words were here at most a mild antiseptic with no prognostic or retrospective assurance that they eliminated the sepsis.

 Conner v. United States, 5 Cir. 1963, 322 F.2d 647, enunciates the general principle that an erroneous admission of evidence is cured by instructing the jury to disregard it where substantial rights of the defendant are not affected—that is, where guilt is clear and error, if any, is harmless. However, where, as here, the testimony is highly prejudicial and otherwise irrelevant to the case, not declaring a mistrial constitutes plain error under Fed.R.Crim.P. 52(b) and is not cured by a court admonition to disregard. For example, in Boyd v. United States, 1891, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077, the court in a murder trial erroneously admitted proof of other robberies committed by the accused and attempted to cure the error by an explicit charge. The Supreme Court, however, reversed the case, saying:

"Whether Standley robbed Brinson and Mode, and whether he and Boyd robbed Hall, were matters wholly apart from the inquiry as to the murder of Dansby. They were collateral to the issue to be tried. * * * However depraved in character, and however full of crime their past lives may have been, the defendants were entitled to be tried upon competent

evidence, and only for the offense charged." Id. 142 U.S. at 458, 12 S.Ct. at 295, 35 L.Ed. at 1080.

See also McMillian v. United States, 5 Cir. 1966, 363 F.2d 165, where in a prosecution for illicit liquor operations, the Court admitted hearsay testimony of an officer to the effect that as he approached defendant's house, he recognized a car described by an informant as having been involved in *other* illicit operations in the state. We held in that case that the statement was so highly prejudicial as to constitute reversible error notwithstanding the court's subsequent instructions to disregard.

Juries do not facilely forget, and we have the lingering suspicion that the malodorous epithet "jailhound" may explain the incongruent verdict. The attempt to sanitize testimony by admonition may sometimes succeed, but its success will very often depend upon how virulent the diseased testimony was. Not to reverse this case would violate the clearly articulated principles in Helton v. United States, 5 Cir. 1955, 221 F.2d 338. In that case, we held that the appellant in a prosecution for illegal acquisition and production of marijuana was entitled to a new trial because of the admission of prejudicial testimony by a federal agent, who testified that, upon his arrest, appellant stated that he had been smoking marijuana intermittently. The remark was struck, but still we held that:

> " * * * it is doubtful that any instruction, however strong, would have succeeded in destroying the picture which this remark created in the jury's mind of the appellant smoking marijuana, with marijuana growing in his back yard, with some in his bedroom and some in his car. * * *

> " * * * [W]here, as here, the improper evidence was calculated to make such an impression on the jury that no direction from the court, however strong, can eliminate the prejudice thereby created, the trial court must declare a mistrial." Id. at 340–41.

Judge Kalodner, in United States v. Clarke, 3 Cir. 1965, 343 F.2d 90, 92, a similar factual setting to the Helton case, gave a classic reaction. He said that the trial judge's view that his prompt admonition to the jury to disregard the properly stricken testimony removed any possible prejudice in the jury's mind brought to mind the immortal lines:

> 'The Moving Finger writes; and, having writ,
> Moves on: nor all your Piety nor Wit,
> Shall lure it back to cancel half a Line,
> Nor all your Tears wash out a Word of it.'

> Rubáiyát, Stanza 71.

Reversed and remanded.

GRIFFIN B. BELL, Circuit Judge (concurring specially):

Although I do concur in the majority opinion, an additional statement would appear in order from the standpoint of procedure. The testimony in question of Sergeant Johnson was stricken after an objection was lodged on the ground that it was not responsive. There was no objection based on the prejudicial nature of the statement. The District Court sustained the objection, ordered the testimony stricken, and, *sua sponte,* gave a cautionary instruction to the jury. There the matter rested; there was no motion for a mistrial. Thus the District Court accorded all relief requested and more. This means that the reversal can only be on the basis of the plain error rule.

In the following decisions cited by the majority, Conner v. United States, 5 Cir., 1963, 322 F.2d 647; McMillian v. United States, 5 Cir., 1966, 363 F.2d 165; and United States v. Clarke, 3 Cir., 1965, 343 F.2d 90, the error was preserved by a timely motion for mistrial. See also Fahning v. United States, 5 Cir., 1962, 299 F.2d 579, for the same procedural posture. On the other hand, in Boyd v. United States, 1891, 142 U.S. 450, 12 S.Ct. 292, 3 L.Ed. 1077, also relied

on in the majority opinion, the situation was quite similar to the instant case. In that case there was an objection to the testimony, and a cautionary instruction in the jury charge. The Supreme Court, nevertheless, concluded that the testimony regarding unrelated crimes was prejudicial to the extent that a new trial was necessary. The majority opinion also relies on Helton v. United States, 5 Cir., 1955, 221 F.2d 338. There the prejudicial testimony was stricken following an objection. No cautionary instruction was given and no motion for mistrial was made. This court was of the opinion that the prejudicial effect of the testimony could not have been removed by a cautionary instruction, and ordered a new trial. The plain error rule was not mentioned although it was implicit in the decision in view of the finding that the error was not harmless.

Rule 52, F.R.Crim.P., directs that harmless error be disregarded and that a plain error, affecting substantial rights, may be noticed although not brought to the attention of the trial court. The plain error test must be applied here since the error was not preserved. We have said that in determining plain error, "Each case stands upon its own peculiar facts and circumstances as to whether a defendant has been afforded a fair trial. * * * Whenever this Court is of the opinion that a defendant has been denied a fair trial, it must set aside the judgment of conviction." Benham v. United States, 5 Cir., 1954, 215 F.2d 472, 474. See also Helms v. United States, 5 Cir., 1964, 340 F.2d 15, 19. Cf. Alexander v. United States, 5 Cir., 1965, 354 F.2d 59; and Mora v. United States, 5 Cir., 1951, 190 F.2d 749.

Although this reversal will come as a considerable surprise to the District Court in view of the procedure there, I am satisfied that the testimony of Sergeant Johnson was prejudicial to the extent that it may have had substantial influence on the jury, or at least I am left in grave doubt as to the proposition. Koetteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1238, 90 L.Ed. 1557. Thus, reversal is indicated and I concur.