**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Patrick Harrison SINCLAIR, Defendant-
Appellee.**

**No. 30194**

**Summary Calendar.**[*]

United States Court of Appeals,
Fifth Circuit.

Feb. 18, 1971.

Gerald L. Burrows, Atlanta, Ga. (Court appointed), for defendant-appellant.

John W. Stokes, Jr., U. S. Atty., Allen L. Chancey, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before WISDOM, COLEMEN, and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

On November 29, 1968, a guard at the Atlanta Federal Penitentiary was struck on the head by a paper bag containing two iron bar bell weights. Prisoners on the fifth tier of the penitentiary threw the weights at just the moment when they would strike the guard as he was about to perform a routine duty prepar-

York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

atory to making his regular nine o'clock head-count. He survived, miraculously. Three prisoners, appellant Patrick H. Sinclair, Robert E. Field, and Ralph M. Miller, were indicted for assaulting an officer of the United States Bureau of Prisons in the performance of his official duties. 18 U.S.C. § 111. Sinclair and Field were convicted. Sinclair filed a motion for a new trial and now brings this appeal from the district court's denial of that motion.[1] We affirm.

## I.

During the trial the court declared a recess because there were "some matters that the Court and counsel need[ed] to take up in chambers". The attorneys were present; none of the defendants was present or requested, directly or through his attorney, to be present at the meeting. In Chambers the trial judge stated:

> "Gentlemen, we have convened here in the absence of the jury in advance to see whether we have a problem [of hearsay testimony] and, if so, what the resolution of it should be in connection with the testimony of the witness, Charles Kreyger, [a former cellmate of Field's] * * * Let me suggest to you that you go ahead and have this witness testify without any objections, gentlemen. Let's just hear what it is, then we will see what the problem is."

Kreyger stated, under oath, what he knew about the case. In the course of his statement he said that Field had told him, out of the presence of the other defendants, that he had dropped the weights on the officer's head and that Sinclair and Miller had helped him smuggle the weights into the cell area of the penitentiary. The trial judge ruled, without objection, that Kreyger's testimony was "admissible against the defendant Field, but that the witness ought not to testify as to anything Field said about participation by the other two, that is, Miller and Sinclair. If you stay away from that, if you don't testify before the jury since neither of the other two were present, and say anything about what Field said about their having carried any weight and so on, and their activity in it, I don't see any problem about it". The Court saw no objection to Kreyger's testifying as to a conversation he had overheard when all three defendants were present. But "the witness ought to be very careful not to mention Field having said both the others carried in the weights or their having participated in it in the first conversation". The trial judge then warned the defendants' attorneys "to assist the Court in avoiding questions that will require [Kreyger] to say what Field said about one or the other defendants". He then allowed the attorneys to explore more thoroughly who was present in the cell block and who might have heard the conversation.

Another witness was called in to the meeting in chambers, but his statement presented no problem as to its admissibility.

On the resumption of the trial, when Kreyger took the stand, the trial judge, making doubly certain that the rights of Sinclair and Miller would be protected, admonished the jury that "unless the other two defendants were present and heard this conversation [between Kreyger and Field], and I don't understand they were, that the jury will not consider this testimony as evidence against the other two defendants, but only against the defendant Field." Kreyger obeyed the trial judge's in-chambers instructions, as did the attorneys. No one objected then or now to the admissibility of the testimony.

---

1. "It has been said that on such a motion the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." Wright, Federal Practice and Procedure: Criminal § 553, p. 487.

■ In these circumstances it cannot be said that Sinclair was prejudiced by what took place in the trial judge's chambers. On the contrary, he was spared the risk of injury which might have occurred had Kreyger blurted out his whole story in the presence of the jury or had overzealous counsel extracted from Kreyger the hearsay testimony incriminating Sinclair. Although one can imagine cases when the presence of witnesses in chambers might be regarded as a stage of a trial at which a defendant would have the right to be present under the Sixth Amendment or F.R.Crim.P. 43, the meeting in chambers here was (1) not prejudicial to Sinclair (2) was in the nature of a conference on a point of law and (3) in any event, was agreed to, without objection, by the defendant through his attorney. We agree with the court in Deschenes v. United States, 10 Cir. 1955, 224 F.2d 688, 693:

> The final question is whether conferences of the court and counsel on questions of law at the bench or in chambers, out of hearing of the appellant and the jury, denied appellant his constitutional right to be present at every stage of the trial. In the first place, neither appellant nor his counsel made a specific request for appellant to be present at these conferences, and no complaint or objection was lodged to the practice. He therefore cannot complain of any possible prejudice. Steiner v. United States, (5th Cir. 1943), 134 F.2d 931, certiorari denied 319 U.S. 774, 63 S.Ct. 1439, 87 L.Ed. 1721."

## II.

In his motion for a new trial Sinclair's court-appointed attorney alleged that he deprived his client of effective legal assistance; that he had no experience in trying criminal cases and that "the trial was a mockery because of his inability to preserve the defendant's rights".[2] The attorney understated his abilities and the effectiveness of his services.

In MacKenna v. Ellis, 5 Cir. 1960, 280 F.2d 592, 599, this Court formulated the rule: "We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance." The constitutional guarantee " * * * does not underwrite errorless counsel, or successful counsel, or the best counsel available." Odom v. United States, 5 Cir. 1967, 377 F.2d 853, 858. See Pennington v. Beto, 5 Cir. 1971, 437 F.2d 1281.

Trial counsel for Sinclair diligently prepared and presented Sinclair's case. He visited the penitentiary and inspected the site of the assault. He interviewed inmates of the penitentiary and had them subpoenaed to testify to Sinclair's alibi. He ably cross-examined the government witnesses. On cross-examination he brought out that Sinclair's fingerprints were not found on the weights. After the verdict, he arranged to obtain affidavits from additional inmates in support of the motion for a new trial.

■ We respect the candor, zeal, and dedication to his client exhibited in his willingness to take the blame for his client's conviction. We have, however, studied the record carefully, especially in view of the post-trial affidavits, and we must hold that the defendant was not denied effective trial counsel.

## III.

Both the Government and defendants were compelled to rely on the testimony of convicts. It was a swearing contest with the swearers probably subjected to multiform unsavory pressures unfortunately implicit in penal confinement. The jury was in the position of having

---

2. Sinclair's attorney requested that he be permitted to withdraw as counsel on appeal. This Court granted the request and appointed another attorney to represent Sinclair.

to give the greater weight to the testimony of the less incredible group of two groups of hardly credible contesting witnesses. "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 1944, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704. In a criminal case, this must be evidence which a reasonably-minded jury could find adequate to support the defendant's guilt beyond a reasonable doubt. See Henderson v. United States, 5 Cir. 1970, 425 F.2d 134; Nagell v. United States, 5 Cir. 1968, 392 F.2d 934. Taking the evidence in the light most favorable to the government, as a reviewing court is compelled to do, we are constrained to hold that the record supports the verdict.

The judgment is affirmed.