**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Rufus Simon EUBANKS, Jr.,**
**Defendant–Appellant.**

**No. 88–3465**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

July 11, 1989.

Geraldine Smith, Tallahassee, Fla., for defendant-appellant.

Randall Hensel, Asst. U.S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before HILL, CLARK and EDMONDSON, Circuit Judges.

PER CURIAM:

Rufus Simon Eubanks appeals his conviction on one count of possession with intent to distribute crack cocaine. He argues that evidence admitted at trial was illegally obtained and that the prosecutor's comments regarding Eubanks past arrests on cocaine charges irreparably prejudiced his trial.

I. Background

The area surrounding the intersection of Tenth Street and Louisiana Avenue in Panama City, nicknamed Candy Corner, has a high incidence of drug-related activity. Prospective buyers of crack cocaine drive through the area and purchase the drug from street vendors. Because of the illegal activity at Candy Corner and other areas, the Panama City Police Department created a mobile Crime Prevention Unit which targets and infiltrates specific areas to reduce the level of crime.

On September 16, 1987, Officer Mike Mettille, a plainclothes member of the Unit, drove an unmarked pickup truck into the Candy Corner area. He observed Eubanks leaning in the window of another pickup talking to the driver. As Mettille neared the pickup in his own vehicle, someone shouted "Bo Brown"—the street signal that a police officer was approaching.[1] Eubanks backed away from the pickup and walked around in front of it. As Eubanks passed the front of the pickup, Mettille observed two pieces of brown paper drop to the ground.[2] Eubanks walked away and the pickup left the area. Mettille retrieved and opened the two twisted pieces of paper to discover eight and thirteen pieces of crack cocaine, respectively.[3] He marked and submitted the papers for fingerprint tests. Eubanks was not questioned, detained, or arrested at this time.

About five months later, a grand jury returned a single count indictment charging Eubanks with possession with intent to distribute a cocaine base. Eubanks was arrested on February 17, 1988 and convicted of the single charge following a jury trial on April 18, 1988.

II. Discussion

Eubanks raises two issues on appeal. First, he argues that the district court erred in denying his motion to suppress the admission of the pieces of paper and the crack cocaine. Second, he argues that the district court erred in denying his motion for a mistrial after the prosecutor made reference to Eubanks' prior arrests during cross-examination.

A. *Fourth Amendment Claim*

Eubanks filed a motion to suppress the admission of the twisted pieces of paper and the crack cocaine. He argues that because Mettille unlawfully "seized" him on September 16, 1987 without an arrest warrant, Mettille's subsequent "search," which led to the pieces of paper, was unconstitutional. He claims Mettille's seizure

---

1. Mettille testified that Michael McCormack, who was on a bicycle, was the individual who shouted "Bo Brown" and immediately fled the area. Mettille said he did not pursue McCormack because he knew who he was and where he could be found.

2. Based on his experience, Mettille testified that drug dealers in the area used twisted pieces of paper as containers for their drugs because they could be easily discarded and blended in with other trash (making detection difficult).

3. Mettille testified that these quantities of the drug were inconsistent with personal use. He stated that purchasers ordinarily buy one or at most two pieces of crack cocaine.

of the pieces of paper required a search warrant.

Eubanks' argument is entirely meritless. To prove a fourth amendment violation, Eubanks has the burden of proving that (1) an unlawful search has occurred; and (2) that he had a legitimate expectation of privacy. *Rawlings v. Kentucky*, 448 U.S. 98, 104–05, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). He has done neither.

■■■ First, under the fourth amendment no governmental "search" occurs if the place or object examined is publicly exposed such that no person can reasonably have an expectation of privacy. "If the inspection by police does not intrude upon a legitimate expectation of privacy, there is no 'search' subject to the Warrant Clause." *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983). Here, the alleged "search" regarded Mettille's inspection of discarded debris on a public street during daylight hours. Under these circumstances, Mettille's actions do not constitute a search under the fourth amendment. *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 1628–29, 100 L.Ed.2d 30 (1988).[4] "[T]he police cannot be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public." *Id.*, 108 S.Ct. at 1629.

■■■ Second, even assuming a "search" did occur, Eubanks did not have a legitimate expectation of privacy in the abandoned pieces of paper. *United States v. Perry*, 746 F.2d 713, 714 (11th Cir.1984),

*cert. denied*, 470 U.S. 1054, 105 S.Ct. 1760, 84 L.Ed.2d 822 (1985). He claims on appeal that he has a legitimate expectation of privacy in the contents of the paper containers (i.e. his fingerprints and the crack cocaine).[5] Eubanks, however, claimed no ownership of or expectation of privacy in the two pieces of paper throughout the course of trial proceedings.[6] Thus, these disclaimers of ownership or knowledge regarding the items ends any legitimate expectation of privacy in the items. *United States v. Hawkins*, 681 F.2d 1343, 1345 (11th Cir. 1982), *cert. denied*, 459 U.S. 994, 103 S.Ct. 354, 74 L.Ed.2d 391 (1982). For these reasons, Eubanks argument that the district court erred in suppressing this evidence must fail.

### B. *Past Arrest Evidence*

■■■ Eubanks argues that the district court erred in denying his motion for a mistrial after the following interchange between the prosecutor and Eubanks occurred:

Q: You don't particularly like officer Mettille, do you?

A: I don't dislike anyone.

Q: How about the police?

A: No, they never did anything wrong to me to dislike them?

.    .    .    .    .

Q: You were arrested by the police on cocaine charges on September 24 of '87, October of '87, December 17?

R.3 at 101. Eubanks' counsel immediately objected before Eubanks could respond to the prosecutor's question and then request-

---

**4.** In *Greenwood*, the Court held that a warrantless search and seizure of trash contained in opaque plastic bags placed on the street for collection was constitutional because any expectation of privacy its owners had in the trash was unreasonable. *Id.*, 108 S.Ct. at 1628–29. "It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops and other members of the public." *Id.*

**5.** Eubanks asserts that the twisted pieces of paper are analogous to the footlocker that federal agents searched without a warrant in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53

L.Ed.2d 538 (1977). His analogy is misplaced because the defendants in *Chadwick* never abandoned their ownership or privacy interests in the footlocker. Further, the privacy interests in a footlocker, which is intended to be a repository of personal effects, greatly exceeds any asserted interests in discarded debris.

**6.** Eubanks testified he observed Mettille pick up the two paper bags from the street yet Eubanks did not attempt to get Mettille to return them. Record, Vol. 7 at 87. Eubanks also testified that Mettille returned to the area later and claimed that McCormack, the man on the bicycle, told him the bags were Eubanks'. Eubanks stated that McCormack's statement was not true. *Id.*

ed a mistrial. After consultation with counsel, the district court sustained Eubanks' objection and instructed the jury to disregard the question.[7] The court, however, denied Eubanks' motion for a mistrial.

Both parties agree the prosecutor's question was inappropriate because it involved prior arrests rather than convictions. Eubanks argues that the district court's curative instruction did not alleviate the prejudicial effects of the prosecutor's statements about past arrests. He states that the prosecutor intentionally made the remarks near the close of evidence to bolster an otherwise feeble case. The government argues that the prosecutor sought to discredit Eubanks' credibility and Eubanks' assertion that he had no ill-will against Mettille. The government argues the question constitutes harmless error because of the district court's curative instructions.

■ The standard for determining whether the prosecutor's statements are grounds for a mistrial is whether the prosecutor's comments were improper and affected Eubanks' substantial rights. *United States v. Greene*, 578 F.2d 648, 653 (5th Cir.1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1056, 59 L.Ed.2d 96 (1979); Fed.R. Crim.P. 52(a). After examining the record as a whole, we must be convinced beyond a reasonable doubt that the error was harmless. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Greene*, 578 F.2d at 653–54. Because the prosecutor's question about Eubanks' prior arrests was clearly improper, *United States v. Lay*, 644 F.2d 1087, 1091 (5th Cir.1981), *cert. denied*, 454 U.S. 869, 102 S.Ct. 336, 70 L.Ed.2d 172 (1981), our inquiry turns to the evidence against Eubanks.

Our review of the record convinces us that Eubanks' conviction must stand. First, Eubanks did not answer the question and the district court promptly directed the jury to disregard the prosecutor's question. "[E]vidence withdrawn from the jury with a direction by the court that it is to be disregarded may not be the basis of reversible error ... [unless] the remark is so highly prejudicial as to be incurable by the trial court's admonition." *United States v. Smith*, 517 F.2d 710, 711 (5th Cir.1975). Although the prosecutor's question was inappropriate, the district court acted promptly and decisively by issuing a curative instruction.

Second, the evidence against Eubanks is substantial.[8] Mettille's testimony plus the laboratory reports linking the fingerprints on the pieces of paper to Eubanks provides convincing evidence of Eubanks' possession of crack cocaine with intent to distribute. Finally, it does not appear that the government's prosecutor intended to bolster a weak case through impermissible tactics. Instead, it appears that the prosecutor exercised extremely poor judgment. We therefore affirm the district court's refusal to grant a mistrial.

AFFIRMED.

---

7. The court stated "[t]hat question and answer will be stricken from the record and the jury instructed to disregard it." R.3 at 103.

8. Eubanks relies upon *Odom v. United States*, 377 F.2d 853 (5th Cir.1967) in which this Court reversed a conviction based on a police officer's response to the question regarding how long he knew the defendant. The officer testified that he had seen the defendant "in and out of jail and spoke with him for approximately a year and a half." *Id.* at 859. This Court held the testimony constituted plain error. In *Odom*, the Court based its decision on the close questions of proof and the irrelevancy of the officer's testimony. In contrast, we find the evidence against Eubanks to exceed that in *Odom*.