**UNITED STATES of America, Plaintiff,**

v.

**Harry M. KATZ, Defendant.**

**No. 69–223 Cr. T–K.**

United States District Court,
M. D. Florida,
Tampa Division.

June 17, 1980.

Stephen S. Cowen, Asst. U. S. Atty., Tampa, Fla., for United States.

Harry M. Katz, in pro. per.

## ORDER

KRENTZMAN, District Judge.

This matter is before the Court upon a petition filed May 17, 1978 by defendant-petitioner Harry M. Katz. The Court held a hearing on November 13, 1979 and November 14, 1979, at which the parties presented exhibits and arguments. The Court has also had the benefit of a number of supplemental pleadings.

Some history is in order. Petitioner and four co-defendants were indicted on December 19, 1969 on Medicare fraud charges. Defendant Gallizzi was found incompetent to understand the proceedings against him or to assist in his own defense, and was severed from the other defendants on March 26, 1971. Trial of the remaining defendants began on March 29, 1971 and ended April 23, 1971. Petitioner was convicted of three violations of 42 U.S.C. § 408(c) and two violations of 18 U.S.C. § 1001. Defendant Amadio was convicted of two violations of § 408(c).

Petitioner's convictions were affirmed by the United States Court of Appeals for the Fifth Circuit and rehearing was denied. The United States Supreme Court denied certiorari and denied rehearing on the petition for certiorari. *United States v. Katz*, 455 F.2d 496 (5th Cir. 1972), *cert. denied* 408 U.S. 923, 92 S.Ct. 2491, 33 L.Ed.2d 334 (1972).

On October 31, 1973, petitioner filed his first petition for writ of error coram nobis. This Court denied the relief requested on November 8, 1973. The Fifth Circuit affirmed that denial in an unreported decision on July 9, 1974. Petitioner was represented by his retained trial counsel throughout all of these proceedings.

On June 16, 1975, petitioner filed an action against the then-United States Attorney for this District, seeking to compel disclosure of all evidence gathered against him and all documents accumulated in the prosecution. This Court dismissed that suit on September 30, 1976. The Fifth Circuit dismissed petitioner's appeal "[w]ithout prejudice to plaintiff's rights to pursue his remedies under the Freedom of Information Act . . . or as a proper part of an action for relief under 28 U.S.C. § 2255 . . ." on April 8, 1977. *Katz v. Briggs*, 550 F.2d 310, 311 (5th Cir. 1977).

On September 2, 1976, petitioner moved for relief under 28 U.S.C. § 2255. Finding petitioner not to be "in custody" for purposes of § 2255, this Court denied that motion on November 2, 1976. By the same order, petitioner was "directed to show cause with supporting memorandum within twenty (20) days of the date of this order whether a writ of error coram nobis is permissible in this instance and if it is, whether the writ has substantive merit."

Without filing the memorandum or awaiting final ruling by this Court, petitioner appealed the November 2, 1976 order on December 7, 1976. On August 8, 1977, the Clerk of this Court entered final judgment dismissing the action. On January 16, 1978, the Fifth Circuit vacated the dismissal and remanded with directions to petitioner to comply with the November 2, 1976 order.

Petitioner received several extensions of time and on May 1, 1978 was granted leave to amend his petition. He filed the amended petition on May 17, 1978. This petition sets out most of the claims now before the Court:

1. Denial of property and liberty without due process of law: Because of this conviction, petitioner's Medical license was revoked, which places a restriction on freedom of movement & to earn a living in his chosen profession which conviction he alleges is without due process of law;

2. Petitioner was denied his constitutional right to a speedy trial: An excessive period of delay elapsed before the grand jury and/or trial, which was not acquiesced in or consented to and his motion to dismiss indictment for lack of speedy trial was denied without proper consideration;

3. Delay in trial was prejudicial to defense and denied a fair trial: Because of great delay memories had faded as to fact or fiction—a star witness went insane—several witnesses died—all were referred to during trial—this denied right to present a defense or to cross-examine, which was prejudicial to a fair trial;

4. Newspaper publicity was prejudicial to defense and denied fair trial: Newspaper publicity went to the witnesses & jury from sources outside the courtroom that petitioner had embezzled $300,000 + and more This indicated prior record, not at issue and denied the const. right to an impartial jury;

5. Petitioner was denied his constitutional right to counsel during trial: (1) Petitioner's counsel was not present during the jury deliberation and they returned to ask for additional instruction and to have testimony re-read as to Count 31 which involved the same testimony as to No. 30 of which petitioner was convicted. He did not waive counsel during the deliberation period. (2) The trial judge refused to allow counsel and failed, refused or neglected to instruct the jury as to the act of the offense charged or give a definition of a "hospital visit" or

differentiate from a meaningful, intelligent, informed, creative or constructive visit and the fact finders were not aware as to what is a hospital visit of which the conviction is based, denied petitioner the right to counsel;

6. The statute 18 U.S.C. Sec. 2 & 1001 and 42 U.S.C. 408(c) is unconstitutional as applied: The statute does not define or interpret the material act or inform whether a defendant is to defend against a positive or negative act and penalizes frank difference of opinion or innocence error, which may be made despite the exercise of reasonable care, and a jury is left to define or interpret something of which they have no knowledge;

7. The government suppressed evidence favorable to the defense which was likely to have changed the verdict of the jury: The investigators' reports for Ernst & Ernst's final audit—the investigators Roche and Mote reports—investigators reports submitted to the grand jury were not made available to the defense, which all contained favorable evidence. The defense was denied the grand jury reports and the reports submitted to them. He was denied the full Jencks Act material by an in camera inspection by the court. This was violative of due process;

8. Interjection of inflammatory remarks and introduction of irrelevant evidence denied a fair trial: The indictment charged 31 substantive counts, a conspiracy with 71 overt acts—numerous witnesses and 538 exhibits, introduction of this was prejudicial to the five counts of which petitioner was convicted. Because of the many counts, witnesses and exhibits highly inflammatory remarks to the jury were made indicating petitioner operated on patients after they were dead— operated needlessly on others. That petitioner violated patients' religious beliefs. These statements were not related to hospital visits—was inflammatory to the minds of the jury and denied a fair and impartial trial.

At hearing and by a supplemental pleading filed November 15, 1979, petitioner raised two additional issues:

9. Petitioner alleges and will show that he was represented by ineffective assistance of counsel at the appellate stages of the proceedings for failing to allege grounds evident to any competent and reasonable Attorney. These grounds are set forth in . . . the original petition.

10. Further, Petitioner will allege that he was represented by ineffective assistance of counsel at the trial stages grounds set forth [in] . . . the original Petition. Counsel was ineffective in failing to pursue these grounds in the District Court and resulted in prejudice to the Petitioner and further showed ineffectiveness in failing to bring these grounds to the appellate level.

In accordance with the November 2, 1976 order and because the Court is aware of no other presently available means by which petitioner might obtain relief, the Court considers his claims as on a petition for writ of error coram nobis.

Coram nobis ("before us") was used to attack both civil and criminal judgments in the Court of the King's Bench. Similar relief was sought in the Court of Common Pleas by a petition for writ of error coram vobis ("before you"). The use of these writs at common law is illustrated by an early treatise:

If a judgment in the King's Bench be erroneous in matter of *fact* only, and not in point of law, it may be reversed in the *same* court, by writ of error *coram nobis*, or *quae coram nobis resident*; so called, from its being founded on the record and process, which are stated in the writ to remain in the court of the lord the king, before the king himself; as where the defendant, being under age, appeared by attorney, or the plaintiff or defendant was a married woman at the time of commencing the suit, or died before verdict, or interlocutory judgment: for error in fact is not the error of the judges, and reversing it is not reversing their own judgment. So, upon a judgment in the King's Bench, if there be error in the

*process*, or through the default of the *clerks*, it may be reversed in the same court, by writ of error *coram nobis*. . .

2 Tidd's Practice, 1136–37 (4th Amer. ed.).

■ Although coram nobis was abolished in federal civil practice by the 1948 amendments to Rule 60(b), Fed.R.Civ.P., the writ remains available in certain federal criminal cases. *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

■ Coram nobis is a limited remedy. One limitation is that statutory remedies must be unavailable or inadequate. *Correa-Negron v. United States*, 473 F.2d 684 (5th Cir. 1973). As petitioner is not in custody, habeas corpus and § 2255 relief are not available. He is not alleging an illegal sentence or one imposed in an illegal manner, so no relief is available under Rule 35(a), Fed.R.Crim.P. The time for filing motions under Rule 35(b) expired in early 1973. It is likewise too late for the filing of a motion for a new trial under Rule 33, Fed.R. Crim.P.; such motions were made and denied shortly after trial. The Court finds that petitioner has no adequate alternative remedy.

A second limitation is that petitioner must show a present adverse effect from the conviction he wishes to attack. Petitioner alleges and the Court finds that he is adversely affected in that his conviction impedes his efforts to regain his license to practice medicine.

The third, and least precise, limitation is that coram nobis is "an extraordinary remedy," available only to attack "errors of fact . . . of the most fundamental kind" and "only under circumstances compelling such action to achieve justice." *Morgan, supra*, 346 U.S. at 511, 74 S.Ct. at 252; *United States v. Mayer*, 235 U.S. 55, 69, 35 S.Ct. 16, 19, 59 L.Ed. 129 (1914).

Petitioner was represented by retained counsel at trial, on appeal, and through the appeal of the denial of his first petition for writ of error coram nobis. He has been denied relief from his conviction at least five different times, not including denials of rehearing. (May 11, 1971—denial of motions for judgment of acquittal and for new trial; Feb. 23, 1972—conviction affirmed by Fifth Circuit; June 26, 1972—certiorari denied; Nov. 8, 1973—first coram nobis petition denied; and July 9, 1974—Fifth Circuit affirms denial of first coram nobis.) Except as to the claims of suppression of evidence and ineffective assistance of counsel (claims 7, 9, and 10), petitioner and his counsel were aware of the grounds for the current petition at the time of the initial appeal from conviction. As set out more fully below, the Court finds that petitioner has not proffered any substantial credible evidence in support of the suppression of evidence and ineffective assistance claims.

■ The Court finds that petitioner is not attempting to correct errors of fact of the most fundamental kind and that the circumstances presented do not compel issuance of a writ of error coram nobis to achieve justice. Accordingly, this petition for writ of error coram nobis should be denied.

The above conclusion requires analysis of several of petitioner's claims. In order that a remand not be necessary in the event that this Court is found to be in error as to the availability of coram nobis, the Court now addresses each of petitioner's claims.

■ The proceedings at trial are presumed to have been correct and valid. Petitioner must carry the burden of showing otherwise, if he is to have relief. *Morgan, supra*, 346 U.S. at 512, 74 S.Ct. at 253. The Court is not required to scrutinize the 4,000 page transcript in search of error.

The vast majority of the evidence petitioner presented at hearing consisted of his own testimony. The Court notes that petitioner is a man obsessed with overturning his conviction. Petitioner's obsession is evidenced, in part, by his consistent distortion and mis-reading of the record, by his assertion that all persons involved in his prosecution, including the Assistant United States Attorney who is now handling this case (who did not graduate from law school until the year after this case was tried) are en-

gaged in "an escalating series of criminal conspiracies" against him, and by his repeated statement that "I want my life back." The Court finds that petitioner has a great interest in this case. The Court further finds that when weighed against the testimony of neutral witnesses and the presumption of regularity in the trial proceedings, the petitioner's testimony, contentions, and allegations are not credible.

Claim no. 1 sets out the present adverse effects petitioner suffers. Except as it incorporates other claims, it does not present a ground on which petitioner seeks reversal.

Claims no. 2 and 3 allege denial of speedy trial by both pre-indictment and post-indictment delay.

Pre-indictment delay claims lie under the Due Process clause of the Fifth Amendment. The Court is required to consider the length of the delay, the reason for the delay, and the prejudice to the petitioner arising from the delay. No one factor is controlling: "[t]o accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case." *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

Post-indictment delay claims come under the Speedy Trial Clause of the Sixth Amendment. The Court is required to balance the length of the delay, the reason for the delay, prejudice to petitioner resulting from the delay, petitioner's assertion of his right to a speedy trial, and such other circumstances as may be relevant. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

Petitioner and his co-defendants were indicted on December 19, 1969. The indictment charged a conspiracy (of which all defendants were acquitted) extending from "[o]n or about July 1, 1966, and continuously thereafter until on or about March 22, 1968.") The last overt act was alleged to have occurred January 5, 1968. The last substantive offenses occurred December 19 (Katz—Count 30) and 20 (Amadio—Count 4), 1967. The jurors were sworn and trial began March 29, 1971. There was a twenty-one month delay between the end of the alleged conspiracy and the indictment, a twenty-four month delay between the date of the last offense for which anyone was convicted and the indictment, and a fifteen month delay between indictment and trial.

This Court is not aware of any reported decision concerning pre-indictment delay in a multi-count case in which the defendant was acquitted of the later counts and convicted of an earlier one. For the purposes of this analysis, this Court assumes that petitioner is entitled to have it considered that his indictment was delayed until twenty-four months after the time of the offenses.

Petitioner lumps together his claims of prejudice from both pre- and post-indictment delay. *See* 3, *supra,* in list of claims. Petitioner did not elaborate upon the claims of prejudice in his petition at the evidentiary hearing.

Preliminarily, there is no right to cross-examine a witness who did not appear and testify.

Petitioner has not specified to which witnesses he is referring. The Court presumes the severed defendant Gallizzi is the "star witness." Gallizzi was severed upon this Court's finding that he was mentally incompetent to stand trial or to aid in his own defense. He fled the country, was subsequently arrested after returning, and eventually died without being tried.

The only other potential witnesses who died of whom the Court is now aware were Adolph Spreng and Katie Newman. If any party was prejudiced by the deaths of Spreng and Newman, it was the Government and not petitioner. Their deaths resulted in the dismissal before trial of Counts 11, 23, 24, 25, and 28. *See* transcript of final status of case hearing of March 26, 1971, filed September 21, 1971.

Petitioner has not indicated what testimony he would have sought from the de-

ceased witnesses or how he was prejudiced by their absence.

Petitioner also claims that "memories had faded as to fact or fiction." He has not set out the witnesses whose memories failed, the events of which their memories failed, or the effect it might have had at trial. "A general allegation of loss of witnesses and failure of memories is insufficient to establish prejudice." *United States v. Zane,* 489 F.2d 269 (5th Cir. 1973); *United States v. Netterville,* 553 F.2d 903 (5th Cir. 1977).

The Court finds that petitioner has not established that he suffered any significant prejudice from the pre- and post-indictment delays.

Petitioner made no attempt at hearing to show the reasons for the delays. The Government did not volunteer any reasons. Petitioner having the burden of showing improprieties in the trial, the Court must presume that the delays were caused by the factors that are apparent on the face of the record.

This case involved five defendants, a conspiracy charge alleging 71 overt acts, and 30 substantive counts. The Government offered approximately 500 exhibits and 75 witnesses at trial. The trial took four weeks. The issues were complicated. The witnesses were scattered from Florida to Belgium. There was an investigation by a state grand jury before the federal investigation commenced.

Post-indictment, the parties and the Court were occupied with substantive motions, including those relating to Gallizzi's competence to stand trial, from February 24, 1970 until at least October 19, 1970. Trial was originally scheduled for March 1, 1971. However, it was re-scheduled for March 29, 1971 upon request by petitioner on February 2, 1971. The delay from October 1970 until February 1971 is, at least in part, attributable to Gallizzi's flight from the United States.

The Court finds that the delays in indictment and trial of the petitioner are attributable primarily to the complexity of the case, to the resulting need for great prepa-

ration and investigation, to the Government's decision to await completion of the state's investigation before proceeding, to problems with Gallizzi, and to the necessary disposition of pre-trial motions. It is possible that the Government and the Court might have proceeded more rapidly to trial. However, *Marion* and *Barker* were not decided until after this trial, so that the Court and counsel had not been alerted to the importance of speedy indictment and trial.

The Court specifically finds that the Government did not intentionally delay either indictment or trial to gain tactical advantage.

No defendant moved for speedy trial or otherwise asserted speedy trial rights until Amadio moved to dismiss for lack of a speedy trial on March 10, 1971. *See* Court's order of March 11, 1971.

 In the absence of any showing of prejudice, petitioner's pre-indictment due process claims are without merit. *United States v. Beckham,* 505 F.2d 1316 (5th Cir. 1975).

Upon consideration and balancing of all the relevant factors, petitioner is not entitled to relief because of post-indictment delay. *Barker, supra.*

Petitioner's next claim is that he was denied an impartial jury by pre-trial publicity. Petitioner has never offered any evidence, other than his own statement, that there was any adverse pre-trial publicity. Assuming there was such adverse publicity, petitioner offers no evidence that any of the jurors were exposed to it, other than his opinion that the Court's repeated instructions to the jurors not to read newspaper stories was ineffective. During voir dire, the Court directed the jurors not to read anything about the case, or to watch anything about it, or to let anyone talk to them about it. These instructions were repeated practically every time the jurors left the courtroom.

Petitioner did not move for a change of venue. Prejudicial publicity was not a basis for his motion to sever, nor of his motion for acquittal or new trial, nor of his direct

appeal. Petitioner was, in fact, acquitted of two of the counts that went to the jury.

■ The Court finds that petitioner presents no significant, credible evidence in support of his claim of prejudicial publicity, so that he is not entitled to relief upon this ground.

Petitioner's fifth claim is that he was denied his Sixth Amendment right to counsel, first by counsel's absence during portions of the jury deliberation and second by the Court's failure to give an instruction as to the definition of a "hospital visit."

Petitioner claims he was unrepresented during jury deliberation, when the jury requested additional instruction, when they asked that testimony be re-read, and at receipt of the verdict.

During the great majority of the jury deliberation, all parties, counsel and the undersigned were absent from the courtroom. These were not circumstances under which counsel could "assist" petitioner.

During deliberation, the jury requested additional instruction on conspiracy. The trial transcript affirmatively shows that Mr. Kinney, petitioner's counsel, was present and participated in the proceedings dealing with this request. *See*, Transcript at 3593–3615.

Mr. Kinney was absent when the jury requested that testimony be re-read and when the verdict was returned. However, petitioner was represented by other counsel as the transcript indicates:

MR. ANTINORI: Your Honor, may the record reflect that I am appearing with Dr. Katz in behalf of Mr. Kinney?

THE COURT: Yes, sir.

Now, Dr. Katz, Mr. Kinney informed me that it was agreeable with you that these proceedings which have occurred, in the absence of Mr. Kinney, were agreeable to you; and that has been confirmed by these other attorneys.

Is that correct?

DR. KATZ: Yes.

Transcript at 3632–33. *See also* Transcript at 3616–17, 3623–24, and 3628.

Petitioner does not explain how the Court's failure to give an instruction could amount to denial of counsel. As a matter of record, *the Government* requested an instruction on the meaning of "hospital visit." Petitioner's counsel objected and the Court refused to give the requested instruction, holding that it was a factual matter as to which there had been testimony. *See* Government's Requested Instruction No. 36 and Transcript at 3326–27 and 3510–11.

Petitioner is not free to change his mind and to now assert he is entitled to the instruction he did not want at trial. No appeal was taken from the Court's refusal to give the instruction. More importantly, the Court's ruling was and is correct, for the reasons given in the record.

■ For the reasons given above, petitioner is not entitled to relief upon his fifth claim.

Petitioner's sixth claim is that the statutes under which he was convicted are unconstitutional as applied to him. Petitioner made a similar argument on direct appeal, in his claim that this Court erred in denying his motion for judgment of acquittal. *See* Government's exhibit no. 10 at hearing (petitioner's brief on direct appeal), pp. 24–34. The Fifth Circuit rejected that claim.

The statutes involved are 18 U.S.C. §§ 2 and 1001 and 42 U.S.C. § 408(c). Section 2 defines "principal" without any apparent ambiguity or other defect. Section 1001 makes it a felony to knowingly and willfully make a false statement in a matter within the jurisdiction of the United States. This statute has been repeatedly upheld as constitutional. *See* cases cited at 18 U.S. C.A. § 1001, note 1. Section 408(c) makes it a misdemeanor to make a false statement for use in determining rights to payment under certain programs administered by the Social Security Administration. Although § 408(c) has not been tested in the manner § 1001 has, the similarity in the two provisions' wording and the numerous cases upholding the latter strongly suggest that the former is also constitutional.

Petitioner's argument appears to be that the statutes do not give fair warning of what is prohibited. As applied to him, the statutes mean that it is illegal for a physician to falsely state on a medicare claim form that he has provided services to a medicare patient when he has not provided those services to that patient. The Court finds that this is not an unconstitutional application of the statutes.

During portions of the hearing on the petition, petitioner appeared to be arguing that there was insufficient evidence to convict him. This claim has already been resolved against him, by the jury's verdict, by the Court's refusal to grant his motion for judgment of acquittal, and by the Fifth Circuit's affirmance of his conviction.

For the above reasons, petitioner is not entitled to relief upon his sixth claim.

Petitioner's seventh claim is that he was improperly denied favorable evidence and/or Jencks Act statements.

Preliminarily, the Court is aware that petitioner is engaged in a continuing effort to obtain materials relating to his conviction from the Government under the Freedom of Information Act (FOIA). However, no FOIA claims are now before the Court in this case. The Court will not rule on claims not properly before it.

Petitioner has submitted his exhibits nos. 1, 2, and 3, which he claims he should have received at trial. Petitioner's seventh claim fails because he has not shown that he (or his counsel) did not receive these documents at trial (except for those documents which were not created until after the trial). Many statements of witnesses were produced at trial. *See* transcript at 867–70 for the procedure used.

Even were the Court to assume that these materials were not disclosed, petitioner has failed to show a violation of his rights.

Petitioner's rights to statements of witnesses are governed by the Jencks Act, 18 U.S.C. § 3500. Because he made a general request for exculpatory materials before trial (motion for disclosure of favorable evidence of February 24, 1970), his rights to exculpatory materials are governed by *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Petitioner's exhibit no. 1 is 1979 correspondence between petitioner and the Department of Health, Education, and Welfare (H.E.W.) concerning his FOIA requests. This correspondence could not have been produced at trial and is not in any respect exculpatory or within the Jencks Act.

Petitioner's exhibit no. 2 is a composite of materials obtained under FOIA. These materials are not statements of witnesses within the Jencks Act. With the exception of the fifth page, they are not even arguably relevant, much less exculpatory.

The fifth page of exhibit no. 2 is a letter from the Special Agent in Charge of the Tampa F.B.I. office to the director of the F.B.I., dated November 2, 1967. It is headed "MEDICARE FRAUD INVOLVING PINELLAS GENERAL HOSPITAL" and states, in pertinent part, that:

> In opinion of the Tampa Division, it does not appear a possible violation of federal law coming under jurisdiction of the Bureau is involved and no further action being taken by the Tampa Division.

> This matter being disseminated to the Pinellas County State Attorney, Clearwater, Florida, as possible local criminal fraud and violations local in nature are involved.

This document is, at most, marginally relevant to the issues involved in petitioner's trial. Rule 401, Fed.R.Evid. Had this document been offered by petitioner at trial, it would have been excluded because of the substantial dangers of unfair prejudice to the Government, confusion of the issues, and misleading the jury. Rule 403, Fed.R. Evid.

Petitioner's exhibit no. 3 consists of:

1. a cover letter dated October 3, 1979, which accompanied FOIA materials sent to petitioner by H.E.W.;

2. a letter from Social Security investigator Mote to Assistant United States Attorney Dempsey, dated May 5, 1971, concerning sentences in other Medicare fraud cases;

3. a letter from H.E.W. to Dempsey dated December 11, 1970, concerning trial preparation and materials relating to the case; and

4. approximately 60 pages of excerpts from reports by Social Security investigators (Roche, Mote, and Allen).

█ The only witnesses whose statements are contained above is Roche, so that the only portion of exhibit no. 3 which might qualify as Jencks Act statements are those excerpts from his reports. The Government is only required to produce statements which relate to the subject matter of a witness's testimony on direct examination.

Roche testified about an interview with defendant Madge Mathis (almost entirely outside the jury's presence) and about documents taken from petitioner's office which were being offered as exhibits. Mote prepared a report concerning the Mathis interview and, although it was not a Jencks Act statement, this report apparently was given to defense counsel. See Government's exhibit no. 7 at hearing (in camera) and transcript at 366.

The 1979 letter was prepared eight years after the trial. It is not exculpatory.

The 1971 letter indicates that other persons convicted, primarily through guilty pleas, of more egregious Medicare crimes received lighter sentences than petitioner. This information could not have affected the fact of petitioner's conviction (which the subject of his complaint) and would not have affected the sentence he received.

The 1970 letter states that the author had a conference table covered with material pertaining to petitioner's case. There is no indication that any of this material was exculpatory or that it was not being provided to petitioner.

The excerpts contain three categories of comments which petitioner claims are exculpatory: statements by staff and patients that he was a wonderful man, a good doctor, etc., statements that he visited his patients every day, and comments which are alleged to show bias by the investigators.

As mentioned above, Roche was the only investigator who testified at trial. Roche's testimony before the jury consisted of the formal identification of documents, so that petitioner could not have significantly aided his case by impeaching Roche through his comments. The comments are relatively innocuous, in the context in which they appear.

Statements that petitioner was a good man, etc., are character evidence generally not admissible under Rule 404, Fed.R.Evid. Petitioner has not suggested that these statements would fall under any of the exceptions contained in Rule 404. Even were they within an exception, the statements' relevance is so slight that they would likely be excluded under Rule 403.

Statements that petitioner visited his patients on a daily basis appear throughout the trial. Transcript at 685–86, 863, 864, 1930, 2375, 2383–84, 2392, 2880. Additional statements to the same effect do not add materially to petitioner's case.

Petitioner's exhibits do not indicate the existence of any Jencks Act statements or exculpatory evidence which has not yet been provided to him.

█ This Court finds that there is no evidence that any relevant Jencks Act materials or exculpatory materials were denied petitioner at trial. Even if petitioner's exhibits nos. 1, 2, and 3 were not produced at trial, they do not create a reasonable doubt about guilt. Agurs, supra.

Accordingly, petitioner is not entitled to relief upon his seventh claim.

Petitioner's eighth claim is that he was prejudiced by the introduction of irrelevant evidence and by inflammatory remarks. Motions concerning this claim were made and denied at trial. Transcript at 606–610, 1279–91, 3494–95, defendant Katz's motion for judgment of acquittal after discharge of jury and notwithstanding the verdict of the

jury and, in the alternative, for a new trial, filed May 7, 1971, and Court's order of May 11, 1971. The Fifth Circuit heard and denied this claim in the initial appeal. Government's exhibit no. 10 at hearing and *Katz, supra*, at 455 F.2d 498. This Court need not and will not consider this claim again.

Petitioner's ninth and tenth claims are that he received ineffective assistance from his retained counsel, on appeal and at trial, respectively. Petitioner did not call his counsel as a witness at hearing.

For at least twenty years, the Fifth Circuit has followed the standard set out in *MacKenna v. Ellis*, 280 F.2d 592 (5th Cir. 1960):

> We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.

The Fifth Circuit has reiterated this standard in numerous cases, including *Odom v. United States*, 377 F.2d 853 (5th Cir. 1967):

> It is abundantly clear, however, that the guarantee [of the effective assistance of counsel] does not underwrite errorless counsel, or successful counsel, or the best counsel available. It is equally true that errors of judgment and tactical errors on the part of any attorney do not constitute a denial of effective assistance.

As set out above, petitioner has failed to show the violation of any of his rights at trial. *A fortiori*, he has failed to show that his counsel was ineffective in failing to protect his rights, either at trial or on appeal.

At hearing, petitioner raised several contentions relating to ineffective assistance, other than those contained in his pleadings. His most serious complaint is that his counsel "extorted" a $20,000 fee from him after petitioner and the firm had agreed upon a $10,000 fee. Regardless of the truth or falsity of this allegation, it goes to the price of representation and not the quality of it.

Petitioner also alleges a conflict of interest in that, at some unspecified time, the firm of which his counsel was a member represented the accounting firm of Ernst & Ernst. Ernst & Ernst performed hospital audits for Medicare, including an audit of petitioner's hospital. Petitioner stated at hearing that the auditors found no evidence of wrongdoing by either the hospital or himself. The Court finds that there was no conflict of interest, that petitioner was not demonstrably injured by the circumstances, and that, in any event, he is in no position to complain about his own choice of counsel.

Other than this, petitioner argued, vaguely, that his counsel should have or should not have asked questions, put on witnesses, made motions, and so forth. If these were errors on counsel's part, they were no more than errors of judgment and tactics. Again, effectiveness is not judged by success or failure at trial.

At the time of trial, petitioner's counsel had been a member of the bar of this Court for fifteen years and a member of the Florida Bar for twenty-seven years. He was and is recognized in the local legal community as a vigorous trial attorney. Based upon the Court's experience with this attorney, most importantly the Court's experience during the trial of this case, the Court finds that petitioner's counsel was reasonably likely to render and did render reasonably effective assistance of counsel, both at trial and on appeal. For this reason, petitioner is not entitled to relief upon his ninth and tenth claims.

For all of the above reasons, the Court finds that this petition does not present meritorious claims, that this petition does not present errors of fact of the most fundamental kind, and that these are not circumstances compelling the issuance of the extraordinary writ of error coram nobis in order to achieve justice. The petition should be and it is DENIED.

On April 23, 1980, the Government moved for an order authorizing disposal of numerous items of evidence.

The motion indicates that petitioner has been given opportunities to examine and to remove this evidence, with the exception of ammunition (which a convicted felon is not entitled to possess). Petitioner has failed to take advantage of these opportunities, but nonetheless opposes the motion.

The Government is not required to provide storage for an indefinite period of time for records petitioner does not want now, but may want at some time in the future. Trial of this case ended over nine years ago. That is long enough.

It is ORDERED that petitioner shall have thirty days from the date of this order within which to examine and to remove the items listed in the Government's motion, with the exception of the ammunition, at his own expense. Any of these materials which petitioner does not remove within this period may be disposed of at the discretion of the Administrator of the General Services Administration and in accordance with applicable statutes, regulations, and/or procedures.